GAINES v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.    April 22, 1904.)

1. INSURANCE—BREACH OF WARRANTY—FALSE REPRESENTATION OF MARRIAGE—
   EFFECT.

   An accident policy insuring deceased on certain money considerations,
   and on consideration "of the statements in the schedule hereinafter con-
   tained, which statements the assured makes on the acceptance of this
   policy and warrants to be true," one of the statements in which schedule
   was that the policy, in case of death, should be payable to assured's wife,
   was forfeited, and the beneficiary could not recover thereon, where as-
   sured had no wife, and the woman designated as his wife was in fact his
   paramour.

Appeal from Special Term, Kings County.

Action by Lottie Gaines against the Fidelity & Casualty Company
of New York. From a judgment for plaintiff, and from an order de-
nying a new trial, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS,
WOODWARD, and HOOKER, JJ.

Charles C. Nadal (W. D. Stiger, on the brief), for appellant.
W. C. Beecher (Alfred C. Cowan, on the brief), for respondent.

HOOKER, J.    Defendant appeals from a judgment in favor of the
plaintiff for the principal sum of an accident policy issued by the de-
fendant, and from an order denying defendant's motion for a new trial.
The complaint alleges that the defendant issued its policy of insurance
to Ulysses Gaines, which provided that the principal sum should be
payable in case of his death to Lottie Gaines, whom he described in
the schedule of warranties made by him at the time the policy was is-
sued, and which appears to be a part of the policy itself, as his wife.
The answer admits the issuance of the policy of insurance, and no
question was raised upon the trial as to the sufficiency of the proofs
of death.    For a separate defense, the defendant alleges that prior to
the issuing of the policy, and also by its terms and provisions, the as-
sured represented to the defendant that he was a married man, and had
a wife then living, named Lottie Gaines, to whom the policy should
be made payable; that these statements he warranted to be true, and
that the policy of insurance was issued on the consideration and faith
of those warranties; that the statements were false and untrue, be-
cause the assured was not then married, and the said Lottie Gaines was
not his wife—and asserts the conclusion that there was a breach of said
warranties, and the policy of insurance was, and therefore is, void.
For a further separate defense, the defendant alleges that by the terms
of the policy of insurance it was stipulated that the policy should not
cover any injury, fatal or otherwise, resulting from dueling or fighting,
and that the assured died from injuries resulting from fighting. It
alleged still another separate defense, to the effect that it was provided
in the policy that in case the assured should suffer injuries, fatal or
otherwise, intentionally inflicted by himself or by any other person, the
liability of the defendant should be limited to the amount of the pre-

mium, and no more, which was $16, and that the insured came to his death by a gunshot wound intentionally inflicted by another person.

It developed from the evidence that the assured was shot and instantly killed by one Connors. The witness Jackson was the only person present at the shooting. The court submitted to the jury the questions whether the assured died from the injuries which resulted from fighting, and also whether the injuries which caused his death were intentionally inflicted by Connors. The evidence upon these issues adduced by the plaintiff was, in our opinion, sufficient to present a question of fact for the jury; and from that evidence that body might well have found as a fact that the assured was not engaged in fighting at the time he received the injuries from which he died, and likewise that Connors did not intentionally inflict upon the assured the injuries which resulted fatally.

At the close of plaintiff's case and again at the close of all the evidence, the defendant moved to dismiss the complaint upon the ground that there had been a breach of warranty, in that the assured had warranted that Lottie Gaines, the beneficiary named in the policy, was his wife, and that it appeared upon the trial that she had not borne, and did not at the time of his death bear, that relation to him. The motion was also based on other grounds, and in denying it the court said: "On the breach of warranty, there is no question that this case is fairly covered by the Story Case, 95 N. Y. 474. There is no doubt about that."

The refusal to grant this motion constitutes error for which the judgment and order must be reversed. It was undisputed that some twenty years ago the plaintiff, the beneficiary named in the policy, was married to one Tazewell, in the state of Virginia, and that no divorce has ever been granted in favor of either the plaintiff or Tazewell. For about nine years prior to his death, the assured had been living with the plaintiff in the borough of Manhattan, had paid the rent of the premises where they resided, and had supported himself and her, and a daughter of plaintiff by Tazewell. During that nine years she bore to the assured two children, both of whom died in infancy. No serious effort was made upon the trial to show that the relation of husband and wife existed between the plaintiff and the assured as a result of a civil contract without ceremony. The only evidence upon that branch of the case was that Ulysses Gaines supported the family, and had introduced the plaintiff as his wife. The record is barren of any evidence to show that any agreement in præsenti to assume the marital relations had ever been entered into, and is likewise wanting in evidence that at the time the deceased and plaintiff commenced their cohabitation she had not heard from or concerning Tazewell for a period of five years, and did not know of his whereabouts, or supposed him dead. The record therefore presents a situation where husband and wife had separated, and the wife was living in open and notorious adultery with the assured; and the question is fairly presented whether the representation made by the assured at the time the policy was written, that Lottie Gaines was his wife, was such a warranty as, if false, was sufficient to render the policy of insurance void.

The contract upon which the action is based provides that the defendant, upon certain money considerations, and upon the consideration "of the statements in the Schedule hereinafter contained, which statements the Assured makes on the acceptance of this Policy and warrants to be true," insured the deceased, etc.   Annexed to the policy is a "Schedule of Warranties" purporting to be made by the assured.   Among the statements there made by him are his age, height, weight, color, residence, employment, duties of his occupation, income, habits, and health, as well as the statement involved in this discussion, which reads as follows: "Policy to be payable in case of death to Lottie Gaines, relationship wife."   We think it established, as matter of law, from the evidence presented in this record, that neither at the time of the issuance of the policy, nor at the time of his death, was Lottie Gaines, the plaintiff, the wife of the assured; and no circumstances exist which permit us to say that she bore such relationship to him as would nullify the effect of his warranties that she was his wife.

Whether a warranty or representation contained in an application for accident insurance, or where made a part of the contract, that the beneficiary is the wife of the assured, is such a warranty as will work a forfeiture of the contract, does not seem to have been the subject of any reported judicial determination in this state.   It is said in May on Insurance (section 305) that:

"In the superior court at Buffalo it was held, where the statements were warranties, that a representation that the person for whose benefit the policy was taken out was the wife of the applicant, when in fact she was not, was untrue, and worked a forfeiture."

It is doubtless this same case which Bliss refers to in his work on Life Insurance (section 120), where he says:

"In an unreported case the superior court of the city of Buffalo held a policy forfeited where, in the application, the statements in which were made warranties, it was stated that the assured was the wife of the insured, and the jury found that such was not the fact."

It is fair to assume that the defendant, and accident insurance companies generally who ask for representations as to the relationship of the proposed beneficiaries, and require that such representations shall be warranties of the assured, do this for the purpose of ascertaining the manner of life, the environments and habits, of such as apply for insurance, that they may reject the applications of those they may deem undesirable risks, employing the judgment and experience of their officers and managers upon the question of the desirability to insure those persons whose answers disclose certain peculiarities of character and manner of life, as well as those where unusual conditions of health or financial status are revealed.

This question was discussed in Travelers' Insurance Co. v. Lampkin (Colo. App.) 38 Pac. 335, in which the Colorado court adopted much the same view that we hold in respect to the effect of the warranty.

In Mutual Aid Society v. White, 100 Pa. 12, the policy contained the provision that, if any of the statements of the applicant made in his application for the policy were untrue and false, the contract was forfeited.   One of the questions asked the applicant was whether he was

married; and, second, the name of his consort. He left unanswered the first, and answered the second question by stating that he was a widower. It was there held that the court erred in submitting to the jury, for its construction, the answer to the first question; saying that it was the duty of the trial court to construe this portion of the contract, as well as every other part thereof. It was there determined that:

"The defendant had a right to have an unqualified answer to its fifth point. If the jury believed that, at the time of the application, Patrick Murphy was not a widower, the plaintiff ought not to have recovered."

In Jeffries v. Economical Life Ins. Co., 22 Wall. 47, 22 L. Ed. 833, the deceased, in answer to an inquiry in his application, whether he was married or single, falsely answered he was single; and, under the express conditions and agreements which were a part of his contract of insurance, this statement he declared to be true, and the policy was issued on the faith of the statement and declarations made in the application. The Supreme Court of the United States (Mr. Justice Hunt delivering the opinion) said:

"It is contended, also: That the false answers in the present case were not to the injury of the company. That they presented the applicant's case in a less favorable light to himself than if he had answered truly. Thus, to the inquiry, 'Are you married or single?' when he falsely answered that he was single, he made himself a less eligible candidate for insurances than if he had truly stated that he was a married man. That, although he deceived the company, and caused it to enter into a contract that it did not intend to make, it was deceived to its advantage, and made a more favorable bargain than was supposed. This is bad morality and bad law. No one may do evil that good may come. No man is justified in the utterance of a falsehood. It is an equal offense, in morals, whether committed for his own benefit or that of another. The fallacy of this position as a legal proposition will appear in what we shall presently say of the contract made between the parties. We are to observe, first, the averment of the plea: That Kennedy, in and by his application for the policy of insurance, in answer to a question asked of him by the company, whether he was 'married or single,' made the false statement that he was 'single,' knowing it to be untrue; that, in reply to a further question therein asked of him by the company, whether 'any application had been made to any other company? If so, when?' answered 'No'; whereas, in fact, at the time of making such false statement, he well knew that he had previously made application for such insurance, and been insured in the sum of $10,000 by another company. * * * There is no place for the argument either that the false statement was not material to the risk, or that it was a positive advantage to the company to be deceived by it. It is the distinct agreement of the parties that the company shall not be deceived to its injury or to its benefit. The right of an individual or a corporation to make an unwise bargain is as complete as that to make a wise bargain. The right to make contracts carries with it the right to determine what is prudent and wise, what is unwise and imprudent, and upon that point the judgment of the individual is subject to that of no other tribunal. The case in hand affords a good illustration of this principle. The company deems it wise and prudent that the applicant should inform them truly whether he has made any other application to have his life insured. So material does it deem this information, that it stipulates that its liability shall depend upon the truth of the answer. The same is true of its inquiry whether the party is married or single. The company fixes this estimate of its importance. The applicant agrees that it is thus important by accepting this test. It would be a violation of the legal rights of the company to take from it its acknowledged power thus to make its opinion the standard of what is material, and to leave that point to the determination of a jury. The jury may say, as the counsel here argues, that it is immaterial whether the applicant answers truly if he answers one way, viz.,

that he is single, or that he has not made an application for insurance. Whether a question is material depends upon the question itself. The information received may be immaterial. But if, under any circumstances, it can produce a reply which will influence the action of the company, the question cannot be deemed immaterial. Insurance companies sometimes insist that individuals largely insured upon their lives, who are embarrassed in their affairs, resort to self-destruction, being willing to end a wretched existence if they can thereby bestow comfort upon their families. The juror would be likely to repudiate such a theory, on the ground that nothing can compensate a man for the loss of his life. The juror may be right, and the company may be wrong. But the company has expressly provided that their judgment, and not the judgment of the juror, shall govern. Their right thus to contract, and the duty of the court to give effect to such contracts, cannot be denied."

It seems hardly necessary, upon this subject, to add anything to the lucid reasoning of the opinion of the federal court. It is sufficient to say that there is no authoritative decision of any court in this jurisdiction holding a contrary view.

We have called attention to the remark of the court granting a nonsuit, that the Story Case governed the question of warranty. The case apparently referred to is that of Story v. Williamsburgh Masonic Mutual Benefit Association, 95 N. Y. 474. That case falls far short of declaring in favor of the contention made by the respondent. In that case Robert Story married the plaintiff some 24 years before the issuance of a certificate in the defendant association, and died shortly thereafter. The object of the association was to provide for the relief of widows, orphans, and heirs of deceased members; and the by-laws required that, upon the death of a member, the widow be paid the sum specified; upon the failure of the widow, the sum to be paid to the children; and upon their failure, to other persons named therein. The certificate upon which the plaintiff there sued, and which had been issued to Story, certified that, in accordance with the by-laws and articles of the association, his wife, Mary Story, the plaintiff, was designated as beneficiary. The association defended the action brought by Mary Story upon the ground that she had not been lawfully married to Robert Story, for the reason that he had another wife living at the time of their marriage. The Court of Appeals affirmed a judgment in plaintiff's favor, and held that the by-law did not limit the power of the defendant so as to prevent it from recognizing as the beneficiary a person designated by a member as his wife, and that the certificate operated as an assent of the defendant association to that designation, and entitled the person so designated, upon the death of the member of the association, in the absence of any other designation or repudiation of the agreement evidenced by the certificate, to receive the fund. Neither the language nor the reasoning of Judge Andrews, who wrote the opinion of the court, can be construed as an authority for the plaintiff's contention that the warranty of Ulysses Gaines, if untrue, was insufficient to render his contract of insurance void. The question of warranty was not in that case. See Clements v. Connecticut Indemnity Co., 29 App. Div. 131, 51 N. Y. Supp. 442, and cases cited; Clemans v. Supreme Assembly R. S. of G. F., 131 N. Y. 485, 30 N. E. 496, 16 L. R. A. 33, and cases cited; Cushman v. U. S.

Life Ins. Co., 63 N. Y. 404. The judgment and order appealed from must therefore be reversed, with costs.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.