GAINES v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. March 9, 1906.)

1. INSURANCE—ACCIDENT INSURANCE—RELATIONSHIP—WARRANTY.
Where deceased falsely warranted in a policy of accident insurance that plaintiff, to whom the policy was payable, was his wife, the policy was void.
[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 677.]

2. MARRIAGE—ILLICIT RELATIONS.
Where plaintiff at the time she went to live with deceased had been married for many years to T., and there was no evidence that any divorce had ever been granted, that he had ever absented himself, that she believed he was dead, or that there was any agreement between plaintiff and deceased in præsenti to assume marital relations, but merely an agreement between them to live together as man and wife, followed by an entry into illicit relations, she could not be regarded as decedent's wife.
[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Marriage, §§ 1–22, 30.]

3. INSURANCE—ACCIDENT INSURANCE—DEATH RESULTING FROM FIGHTING.
Where deceased was shot by C. during an altercation, after having approached C. in a menacing manner and threatend to kill him, de-

ceased's death resulted from fighting, within an exception in an accident policy precluding a recovery thereon.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 1183.]

Appeal from Trial Term, Kings County.

Action by Lottie Gaines against the Fidelity & Casualty Company of New York. From a judgment in favor of defendant, and from an order denying plaintiff's motion for a new trial on the merits and on the ground of newly discovered evidence, she appeals. Affirmed.

See 87 N. Y. Supp. 821.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Alfred C. Cowan, for appellant.
Charles C. Nadal (William D. Stiger, on the brief), for respondent.

HIRSCHBERG, P. J.  I think the verdict of the jury in favor of the defendant is sufficiently supported by the evidence with respect to each of the three points submitted, viz., whether the plaintiff was the wife of the deceased at the time the insurance was effected, whether the injuries resulting in the death of the deceased were intentionally inflicted, and whether the death of the deceased resulted from fighting. The policy is one of accident insurance, payable to the plaintiff, who was warranted by the deceased to be his wife. The case was before this court on appeal from a judgment and order rendered on a former trial, and it was then held that the warranty that the beneficiary was the wife of the insured would, if false, render the policy void. See Gaines v. Fidelity & Casualty Co., 93 App. Div. 524, 87 N. Y. Supp. 821. That case was followed by this court in Makel v. Hancock Mutual Life Ins. Co., 95 App. Div. 241, 88 N. Y. Supp. 757. In the opinion delivered on the first appeal (93 App. Div. 524, 87 N. Y. Supp. 821), while it was stated that the court should have dismissed the complaint for the breach of warranty, it was also stated that the evidence on the other two questions was sufficient to have supported a verdict in favor of the plaintiff. I think that the evidence on these two questions, as presented in the present record, is stronger in favor of the defendant than it was on the first trial.

The question of the relation existing between the plaintiff and the deceased requires no extended discussion. It was undisputed that the plaintiff had been married to one Tazewell many years before the insurance was taken out, and that no divorce had ever been granted. The plaintiff's husband was a witness on the trial. There was no proof that he had ever absented himself, or that the plaintiff had ever made an effort to find out whether he was alive or dead, or that she had any reason to think that he was dead, or that she did so think at the time she commenced to live with the deceased. There is no evidence of an agreement between the plaintiff and the deceased in præsenti to assume marital relations. The evidence is confined to an agreement between the parties to live together as man and wife, followed by an entry into illicit relations. Moreover, it appeared that on the first trial the plaintiff testified that she had never married but once, and that on that occasion she was married to Tazewell; and it further appeared that,

after the death of the deceased, she brought an action against his personal representative to recover money for services rendered by her as housekeeper for the insured during the period, or a part of the period, covered by their illicit relations. The deceased was shot and instantly killed by a man named Connors. Connors testified at the trial, and his evidence was clearly to the effect that he received a blow from the deceased, whom he recognized, and that the shooting was in response to it. He was asked and answered as follows:

"Q. Did anybody strike you but Gaines? A. He was the only man who struck me. * * * Q. In shooting, what were you shooting at? A. I was shooting at the object with the hand up which said, 'You son of a bitch, I'll kill you,' and kept shooting. There were only two persons there—Mrs. Jackson and him. Q. Mrs. Jackson did not try to do you any harm, did she? A: No; she did not hit me. Q. There was nobody else in the place that you saw, was there? A. Nobody else there. * * * How far was he from you at that time? A. He was about four or five feet—something like that; very close. Q. When you drew your pistol, did you shoot in his direction, or point in his direction? A. Shot in his direction; yes, sir. Q. Whom did you intend to shoot? A. Well, I heard him say, 'You son of a bitch, I'll kill you.' When he used those words, 'You son of a bitch, I'll kill you,' I wanted to protect my own life, scare him, or something. Whom did you intend to shoot? A. I was shooting directly towards him. Q. Mrs. Jackson had not done you any harm? A. No. Q. She had not threatened you? A. No. Q. Then the one you intended to shoot was the man who threatened you? A. Yes, sir. Q. And that was Gaines? A. Yes, sir."

The testimony quoted is quite sufficient to justify the conclusion that the deceased came to his death as the result of an assault committed by him upon the person of Connors, and that the shooting which followed it was the direct result of the assault, and that the injuries inflicted upon the deceased, and which caused his death, were intentional and not accidental. These facts, by the express terms of the policy, deprived the beneficiary of any right to recover upon the contract.

I do not find anything in the alleged newly discovered evidence which either requires or justifies the granting of a new trial.

The judgment and orders should be affirmed.

Judgment and orders affirmed, with costs. All concur.