GERTRUDE B. MURRAY, Appellant, *v.* THE NEW YORK LIFE INSURANCE COMPANY, Respondent.

Defendant issued two policies of insurance upon the life of W., each of which contained this condition, if the assured "shall die in or in consequence of a duel, or of the violation of the laws of any nation, State or province," the policy shall be void. In an action upon the policies it appeared that W. and his brother S. planned an assault upon B., and in pursuance of the plan, S. seized B. by the arms from behind and held him while W. beat him with a raw hide. B. succeeded in drawing a pistol, on seeing which, W. sought to escape, and as he was passing through the door into another room he was killed by a ball from the pistol. B. testified that in the struggle with S. the pistol was accidentally discharged. *Held,* that it was immaterial whether this was so, or whether the pistol was intentionally fired by B., in the heat of passion aroused by the assault; in either case the death was the result of a violation by W. of the laws of the State, within the meaning of the condition, and thereby the policies were rendered void.

In submitting the case to the jury. the court requested them to answer specifically the following questions: Did B. fire the shot which killed W. intentionally? Was the killing of W. justified on the ground of self-defense? At the time W. was shot, had he abandoned the combat? The court, however, stated that he did not consider the questions necessary to a verdict. The jury returned a general verdict for the defendant, accompanied with a statement that they were unable to answer the questions. *Held,* that an objection to the reception of the verdict until the questions were answered was untenable.

It is not necessary that a jury in order to find a verdict shall concur in a single view of the transaction disclosed by the evidence ; if their conclusion may be justified by either of two interpretations of the evidence, the verdict may not be impeached by showing that part of the jury proceeded upon one interpretation and part upon the other.
*Ebersole* v. *N. C. R. Co.* (23 Hun, 114), distinguished.

(Argued June 26, 1884 ; decided October 7, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made September 11, 1883, which affirmed a judgment in favor of defendant, entered upon a verdict and affirmed an order and denying a motion for a new trial.

This action was brought upon two policies of insurance issued by defendant upon the life of Wisner Murray.

The material facts are stated in the opinion.

*S. W. Fullerton* for appellant. Where there is no conflict in the evidence upon a material point, the question whether it is sufficient to support the verdict is one of law, and may be considered at any stage of the action. (*Halpin* v. *Third R. R.*, 40 N. Y. 175 ; *Corning* v. *T. I. & N. F. Ave.*, 44 id. 577 ; Code of Civil Pro., § 1337.) The true interpretation and meaning of the policies is that the death must occur as the natural result of the assured engaging in a violation of. the law, or follow as a natural consequence of such violation. (*Goetzman* v. *C. L. Ins. Co.*, 3 Hun, 515 ; *Bradley* v. *Mut. Ben. Ins. Co.*, 45 N. Y. 422 ; *Cluff* v. *Mut. Ben. Ins. Co.*, 13 Allen, 318.) The court erred in overruling plaintiff's objection to the reception of the general verdict until the questions submitted by the court were passed upon and determined by the jury, and her request that the jury be required to retire and pass upon those questions. (Code of Civil Pro., § 1187 ; *Ebersole* v. *N. Ry. Co.*, 23 Hun, 114.)

*Joseph H. Choate* for respondent. The court did not err in charging that it was not necessary for the jury to find, in order to avoid the policy, that the shot which killed the insured

was fired in self-defense, and "that the death followed the assault as its natural and necessary result." (*Cluff* v. *Mut. B. L. Ins. Co.*, 13 Ala. 308; 99 Mass. 317; 3 Lans. 347; 45 N. Y. 430–432; *Goetzman* v. *Conn. Mut. L. Ins. Co.*, 5 Bigelow's L. Ins. Cas. 328; *Shaler* v. *Railway Pass. Asso'n Co.*, id. 331; *Hill* v. *Hartford Acc. Ins. Co.*, 22 Hun, 187; 19 id. 350.) The charge that the policies in question "may be void, whether this violation, of itself, gave the right to take life or not," was correct. (Addison on Torts, 735; Russell on Crimes, 49–50; *Reg.* v. *Jackson*, 7 Cox's C. C. 357; *Rex* v. *Towle*, R. & R. 314; *Wixon* v. *People*, 5 Park. Cr. 129; *U. S.* v. *Sharp*, 1 Pet. C. C. 126.) If there is any error in any of the detached phrases of the charge, such error will be disregarded, if the charge as a whole is correct, and if such phrases, in their respective connections, are properly explained to the jury. (*Sperry* v. *Miller*, 16 N. Y. 407; *Caldwell* v. *N. J. Steamboat Co.*, 47 id. 286; *Ayrault* v. *Pacific B'k*, id. 570–6; *Schile* v. *Brockhaus*, 80 id. 620.) The court committed no error in receiving the general verdict of the jury without definite answers to the questions submitted, and in refusing to send the jury back to further deliberate upon the questions. (*Bogert* v. *Vermilyea*, 10 N. Y. 447; Code, § 1187; *Ebersole* v. *N. C. R'y Co.*, 23 Hun, 114.)

ANDREWS, J.  The policies upon the life of Wisner Murray, each contain a condition that if the assured "shall die in, or in consequence of a duel, or of the violation of the laws of any nation, State, or province," the policy shall be void.  The assured died from a pistol shot from a pistol in the hands of one Berdell, upon whom the deceased and his brother had committed a violent assault, and the defense is based upon this condition in the policy.  It is an undisputed fact that the brothers, acting in concert, planned the assault upon Berdell. They stationed themselves in the waiting-room of the station awaiting his arrival, and when he entered the room Spencer Murray seized him by the arms from behind and held him, while his brother Wisner Murray, standing in front, beat him

over the head and face with a raw-hide, striking from ten to twenty blows, inflicting severe and painful wounds from which the blood flowed profusely, covering his face and clothing. The assault was a brutal one, and, so far as appears, without provocation. Berdell testified that in the struggle to escape from Spencer Murray his hand was involuntarily brought into contact with his hip pocket containing a pistol. He drew it from his pocket, and it appears that Wisner Murray, seeing the pistol, started toward the lunch counter, keeping his face toward Berdell and calling on his brother to "hold him and not to let him shoot." Wisner Murray jumped over the lunch counter, and as he was passing through a door into another room, the pistol in the hands of Berdell was discharged, the ball hitting the assured in the forehead, causing his death.

Berdell, who was called as a witness by the defendant, testified, in substance, that the firing of the pistol was accidental, and was caused by the sudden jerking of his arm by Spencer Murray, who was still holding him, and that he had no intention of firing at the deceased. It is established by the great preponderance of testimony, that until after the pistol was fired Berdell was in the grasp of Spencer Murray, and was struggling to release himself. Berdell also testified that the deceased, during the time he was retreating, had a pistol, which he pointed at the witness as if aiming at him. He is confirmed as to the deceased having a pistol by another witness, and a pistol was found after the affray on the floor near where the deceased fell, a distance of about thirty feet from the place where Berdell was when the shot was fired. The witnesses differ as to the time which elapsed between the commencement of the affray and the firing of the pistol, the highest estimate given by any witness being thirty seconds.

It is not disputed that the assault made upon Berdell was a violation of law. But it is contended that as, according to the evidence of Berdell, the firing was accidental and not intentional, and as it also appears that it happened after the assured had abandoned the combat, his death was not "in, or

in consequence of, a violation of law," and was not, therefore, a death excepted from the operation of the policy. The argument is that death under such circumstances, from an accidental shooting, cannot, in a legal sense, be attributed to the violation of law which preceded it, so as to bring it within the condition of the policy. There must, no doubt, be a relation between the act causing the death and the violation of law to avoid the policy. In the case of *Bradley* v. *Mutual Ben. L. Ins. Co.* (45 N. Y. 422), involving the construction of a similar clause in a life policy, the court said : " It seems to be clear that a relation must exist between the violation of law and the death to make good the defense ; that the death must have been caused by the violation of law."

It may be that the proviso in the policy was primarily intended to exempt the company from the hazard of a death from violence to which persons engaged in the execution of criminal acts are exposed, and especially where the unlawful or criminal act is such as is likely to be met by forcible resistance. It is plain that a homicide committed in self-defense would be a death within the condition ; so, also, a death at the hands of justice in punishment for crime. The death in these cases would be the direct and legitimate result of the criminal act. Another case, a little further removed from the violation of law as its cause, would be one where a party assailed, in the heat of passion, engendered by the act of the assured, on the moment takes the life of the aggressor, although the provocation might not be a legal justification of the homicide. Such a death we conceive might be within the condition, depending upon circumstances. If the violation of law in which the deceased was engaged was trivial, although calculated to some extent to excite opposition or resistance, but the taking of life was a result which no reasonable man could have contemplated as likely to follow from the unlawful act, there would be no such relation between the act and the death that the former could be said to be the cause of the latter. But if, on the other hand, the party killed was engaged in

committing a violent assault, the natural result of which would be to arouse the passions and excite the anger of the party assailed, and in the heat of passion he killed his assailant, the death would, we think, be the result of the unlawful act within the meaning of the policy, although the party causing it exceeded the bounds of lawful resistance. As between the company and the assured his violation of law ought just to be treated as the cause of the death, because the deceased must be assumed to have known the danger he incurred, and that a party resisting an assault under such circumstances, and whose anger is naturally excited, does not mark with exactness the line which separates lawful defense from excessive and unjustifiable force.

We have so far had in view cases where the death of a person insured was the result of the intentional act of another, or of the law. But while it is probable, as we have said, that cases of this kind were primarily in the contemplation of the parties to the contract, the words of the condition are too broad to permit them to be confined to this narrow and rigid limitation. The proviso clearly exempts the company from all risks of life which attend the violation of law, which are the natural and reasonable concomitants of the transaction. Prize-fighting is prohibited by law, and is attended with some danger. Suppose in such a friendly contest, by mishap one of the combatants strikes a blow which causes the death of the other. Would a death under such circumstances be a death in the violation of law within the policy, although there was no intention to kill? However this might be answered, we think it is clear that there may be a death in violation of law within the meaning of the policy, although not intentionally inflicted, and although it was not occasioned by the act of another. A burglar, who in consequence of a misstep, or to escape detection, falls or jumps from the roof of a house which he is attempting to enter, and is killed, dies in violation of law as plainly as if he had been shot by the owner in defense of his dwelling. In the former as in the latter case, the death results from the criminal act, within the policy, as a natural and reasonable consequence, because, although the immediate cause of the death was the fall,

yet the exposure to the danger was encountered in the prosecution of the criminal purpose. Another case may be stated, of which there may perhaps be more doubt. Suppose the assured in this case instead of having been killed by the pistol had, in the struggle with Berdell, ruptured a blood-vessel, or, being predisposed to heart disease, it had been brought on by the excitement of the affray, and he had died from either of these causes in the midst of the struggle. Death from a rupture of a blood-vessel, or from disease of the heart, occurring independently of any violation of law, would be covered by the policy. The company assume the risks of death from these causes under ordinary circumstances. But do they assume such risk when the immediate, exciting cause of the death is a struggle originating in a criminal assault in which the deceased was engaged at the time? To exempt the company, must the death result from some peculiar and special risk connected with the commission of crime? It seems to us not, and that it is sufficient to bring a case within the condition, if there is such a relation between the act and the death that the latter would not have occurred at the time if the deceased had not been engaged in the violation of law.

In the case before us it is said that the shooting was accidental and not voluntary or intentional, and consequently was not a death, in or in consequence of a violation of law. What incidents would attend the assault by the Murrays could not be foreseen. They probably did not know that Berdell had a pistol, and if they had known it, they could not have anticipated that it would be discharged in the manner stated by him. But they took the risk of his resistance to any extremity. They took the risk of any injury which might happen to them in consequence of his handling a deadly weapon, whether such injury was intentional or accidental. The case is to be considered under the actually existing circumstances of the assailants and assailed, and if the killing under these circumstances was not an unnatural result of the attack, the case is within the condition. Assuming that Berdell's statement that the

shooting was unintentional was binding on the jury, and that the killing was accidental, yet the accident was the result of the struggle of Berdell to free himself from the grasp of Spencer Murray, and the jerking of his arm by the latter. The accident, so called, was caused by the assault, and the risk of injury from the discharge of the pistol was occasioned by the criminal act of the Murrays. The claim that Wisner Murray had abandoned the combat before the firing of the pistol, if true, does not meet the difficulty. He was a party to the original encounter. The struggle with Spencer Murray was continuing when the pistol was fired. If the shot had killed Spencer Murray, and he had been the person insured, there could, we think, be no doubt. It killed his brother who was unfortunately within its range, but at a time when it is said he was attempting to escape from the scene. But he was not relieved from responsibility for the act of his confederate in a crime jointly planned, who was continuing the assault, and the act of Spencer Murray in jerking the arm of Berdell, causing the explosion, is as to the company the act of both.

We are of opinion, assuming as true to its full extent the statement made by Berdell, that the defense was established. If, as there is some slight evidence to show, Berdell fired the pistol after he had escaped from Spencer Murray, the case is not changed. At all events the jury upon that theory of the case might well have found, and could not justly have found otherwise, that it was fired by Berdell in the heat of passion, and under circumstances which, if they did not fully justify him, made the firing and the consequent death a natural and reasonable consequence of the assault. Whether, therefore, the firing of the pistol was intentional or not, or whether Wisner Murray had or had not abandoned the combat, the jury upon the evidence were justified in finding as they did by the general verdict, that the assured died in, or in consequence of, a violation of law. This conclusion answers the points made upon the exceptions to the charge.

In submitting the case to the jury the learned judge re-

quested them to answer specifically three questions : *First,* Did Berdell fire the shot which killed Murray, intentionally ? *Second,* Was the killing of Murray justified on the ground that it was done by Berdell for his lawful self-defense ? *Third,* At the time Murray was shot, had he abandoned the combat ? The judge, at the time of submitting the questions, stated that he did not consider them necessary to a verdict, meaning thereby, as we infer, that an agreement of the jury in respect to them was not essential to a recovery. The jury returned a general verdict for the defendant, accompanied with the statement that they were unable to answer the questions submitted. The plaintiff's counsel objected to the reception of the verdict until the questions submitted were passed upon and determined by the jury, but the court overruled the objection.

We think the exception was not well taken. The case was one in which a special verdict was not required. (Code, § 1187.) The point to be determined by the jury was whether the insured died in, or in consequence of, a violation of law. The jury found for the defendant upon this issue, and as was said by BROWN, J., in his very satisfactory opinion, " the jury might well have united in that conclusion, although some should think the shooting accidental, and others intentional, some that it was done in self-defense, others that it was done in the heat of passion, some that the assured had abandoned the combat, others that he had turned to renew the assault upon Berdell with his pistol." It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and a part upon the other.

The case of *Ebersole* v. *Northern Central Railroad Co.* (23 Hun, 114) is not in point. A finding that there was no contributory negligence was in that case an essential element in the plaintiff's right of action. The agreement of the jury

upon that question must have preceded the finding of a lawful verdict.

We think the judgment should be affirmed.

All concur, except DANFORTH, J., absent.

Judgment affirmed.