THEODORA FABIAN, as Administratrix, etc., of FELIX FABIAN, Deceased, Plaintiff, *v.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.*

Supreme Court, Niagara County, March 28, 1931.

*Lee, Ward & Gilrie*, for the plaintiff.

*Roland Crangle*, for the defendant.

CHARLES B. WHEELER, Official Referee. The policy in question contained a provision that if death was " effected solely through external, violent and accidental means * * * directly and independently of all other causes," the defendant would pay in addition to the face amount of insurance an " Accidental Death Benefit " of $1,500.

The question presented for the determination of the referee is whether the insured met his death through " accidental means " within the meaning of the policy of insurance.

The policy was made payable by its terms to " Tekla Fabian " as beneficiary, " *wife of the Insured*," but in case of her death before that of the insured to his executors or administrators. The beneficiary died prior to the death of Felix Fabian and this action is brought by his administratrix.

Both Felix Fabian and Tekla Fabian came to this country from Poland. They lived together as husband and wife for a number of years, although it is very doubtful they were ever married. They had occupied a small living apartment consisting of two rooms on the second floor of 137 Tenth avenue, North Tonawanda.

* See, also, *Manno v. Metropolitan Life Insurance Co.* (139 Misc. 848).

A daughter of the woman by a former marriage lived with them. The evidence is that more or less frequent quarrels took place between the couple. About three months prior to the death of Felix Fabian he had left his alleged wife and gone to the city of Lockport to live. After he had left, Tekla took a boarder to live with her by the name of Luby. Felix, the evidence shows, became very jealous of Luby.

On the night of the 21st day of February, 1928, Felix came to the house, 137 Tenth avenue, to see his alleged wife. She happened at the time to be out on a call at her aunt's. Her daughter, however, was at home and Fabian entered the apartment and waited the return of her mother. The daughter testified it was evident he had been drinking. About nine Tekla Fabian returned to the apartment and with her came the man Luby. Fabian heard the couple coming up the stairs to the apartment. He drew a pistol and rushed into the hallway, evidently intending to shoot Luby. However, Luby ran and got away uninjured. Tekla, however, entered the apartment with Fabian, whereupon ensued a quarrel between them, in which Fabian threatened to shoot Tekla and flourished the pistol. In the course of the talk at the apartment Fabian made threats and asked where Luby had gone, and was told he had gone for the police. Fabian then said if a police officer came " there would be something doing." Telka and her daughter endeavored to wrest the pistol from him, and in the tussle the three got into the bedroom adjoining the kitchen, and while there Fabian shot Tekla through the head and she fell to the floor. It is evident the shot killed the woman instantly.

In the meantime a police officer on his beat got word from headquarters there was trouble at the apartment, and was ordered to go there, which he did. He reached the door of the apartment just before the shot killing the woman was fired. The door to the apartment was locked. Fabian had locked the door and put the key in his pocket. The officer heard the shot, asked admission but could not open the door. He thereupon broke open the door by force and entered. When he got near the door of the bedroom he saw the woman lying on the floor with Fabian beside her. He held a pistol in his hand with his arm extended. The officer, fearing and believing it was the man's intention to shoot him, immediately fired his own pistol three times at the man; one of the shots hit Fabian in the head and from the effects of the shot he died shortly after. There was no light in the bedroom in question but such as shone through the door to it from the kitchen.

Such in brief is the story of the tragedy resulting in the death of the two persons in question.

Was the death of the insured caused solely by accidental means within the meaning of the policy?

We think the evidence justifies the finding that the insured at the time of being shot was engaged, or had immediately preceding his being shot been engaged, in the commission of murder. His threats and acts all point to that conclusion. The police officer appeared on the spot. Fabian still held in his hand the pistol with which he did the deed with his arm extended. The evidence justifies the conclusion he in turn threatened the officer, who was justified in believing he intended shooting him. In that belief the officer was justified in shooting in self-defense.

Under such circumstances it can fairly be said and found that the insured by his own acts had brought about a situation which justified his own killing. Such being the facts, can a recovery be had for the " *Accidental Death Benefit* " provided in the policy? Can it be said the insured's death was brought about by " *accidental means * * * directly and independently of all other causes,*" as provided in the policy?

The insurance company defendant contests the right to such a recovery. It may be proper to here state that the insurance company has paid to the plaintiff the sum of $1,394.50 in settlement of the face of the policy, but refuses to recognize its liability to pay any additional amount by reason of accidental death.

The referee is of the opinion the position of the defendant is sound and supported by the decisions of the courts.

The evidence impresses the referee that the deceased caused his own death by his vicious and criminal acts on the night in question. He had committed the crime of murder, was standing beside or over his victim with a pistol in his hand and an extended arm. It amounted to an assault on the police officer, who was at the very least justified in the belief that his own life was in danger.

We are unable to see how the killing of the infuriated man under such circumstances can be deemed an accident. It certainly could not be deemed an " accident " within the contemplation of the parties to the policy.

The referee is of the opinion that where death is the result of the insured's own vicious and criminal acts it cannot be said that, within the meaning of the policy, death was the result of accidental means.

In the instant case we are of the opinion that the insured's death was just such a case. His shooting by the police officer was under the circumstances brought about as the probable and real result of the insured's own conduct, one which the insured should at least have anticipated. Fabian's own conduct under all the circumstances was the proximate cause of his own death.

In *Gaines* v. *Fidelity & Casualty Co.* (111 App. Div. 36) the insured was killed by another whom he had struck and threatened to kill, and the court held that it was not an accidental death within the meaning of the policy.

In *Taliaferro* v. *Travelers' Protective Association of America* (80 Fed. 368) it was held that a benefit certificate insuring against " death by accident " did not cover a case where the insured was shot in a quarrel in which he was the aggressor.

In *Railway Mail Association* v. *Moseley* (211 Fed. 1) the insured had shot an officer in the back and then ran. He was pursued by the officer who shot and killed him as he fled. The trial court charged the jury that a police officer in whose presence a criminal act is committed may pursue the offender and kill him if he cannot otherwise take him, and the killing was the justifiable and the proximate result of insured's vicious conduct, and that under such facts a recovery could not be had for accidental death. On appeal the charge of the trial court was upheld as correct.

Fuller, in his work on Accident and Employers' Insurance Liability, says (p. 130): " Where assured is guilty of some violation of the law, from which death or injury would be the reasonable and natural result, the insurance company would be exempt." (Citing *Bloom* v. *Franklin Life Ins. Co.*, 97 Ind. 478, 479.) *Murray* v. *New York Life Ins. Co.* (96 N. Y. 614) is an interesting case. The headnote reads: " Defendant issued two policies of insurance upon the life of one W., each of which contained this condition, if the assured ' shall die in or in consequence of a duel, or of the violation of the laws of any nation, State or province,' the policy shall be void. In an action upon the policies it appeared that W. [and his brother S. planned an assault upon B., and in pursuance of the plan, S. seized B. by the arms from behind and held him while W. beat him with a raw-hide. B. succeeded in drawing a pistol, on seeing which, W. sought to escape, and as he was passing through the door into another room he was killed by a ball from the pistol. B. testified that in the struggle with S. the pistol was accidentally discharged. *Held*, that it was immaterial whether this was so, or whether the pistol was intentionally fired by B., in the heat of passion aroused by the assault; in either case the death was the result of a violation by W. of the laws of the State, within the meaning of the condition, and thereby the policies were rendered void."

Under all the facts and circumstances of the case the referee reaches the conclusion that the plaintiff's complaint must be dismissed.

So ordered.