JADWIGA PIOTROWSKI, Plaintiff, *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

Supreme Court, Erie County, August 24, 1931.

*Butterfield & Butterfield* [*Boyce H. Butterfield* of counsel], for the Plaintiff.

*Roland Crangle,* for the defendant.

NOONAN, J. This is an action to recover upon a policy of insurance upon the life of Henryk Piotrowski. By the contract of insurance the defendant undertook to pay a certain sum upon the death of the insured, and a certain additional sum for death " sustained solely through external, violent, and accidental means." The death claim has been paid, and the sole question remaining is whether the death of the insured was the result of accidental means within the intent of the policy.

Upon the trial the facts in the case were undisputed. At the time of his death the insured was in the company of three other men. They, together with the insured, had stolen a Dodge car and were engaged in an endeavor to escape, from police officers who were pursuing them for the purpose of arresting them. In order to prevent them from escaping the police officers, or some of them, fired at the car in order to stop it, but without any specific intention of killing its occupants. The shots took effect, killing the driver of the car and the insured.

By section 1293-a of the Penal Law (as amd. by Laws of 1928, chap. 373) the stealing of the automobile constituted larceny, and there is sufficient evidence of its value to determine that it was grand larceny in the second degree at least, and, therefore, a felony. It follows that the police officers were justified in shooting if it was necessary to do so in order to effect an arrest and that the killing under such circumstances would be justifiable homicide.

At the close of the evidence the plaintiff asked to go to the jury upon the following questions:

Was the insured's death caused by external, violent and accidental means within the meaning of the policy?

Was the insured's death the natural, reasonable and legitimate consequences of his voluntary acts?

Under all the evidence was the insured bound to expect to be killed by the police officers in the manner detailed by the witnesses?

Did the insured, by his own voluntary acts, place himself in a situation where his death was the natural, probable and foreseeable result of such acts?

The defendant moved for a dismissal of the complaint and also separately for direction of a verdict for the defendant upon the ground that the plaintiff had failed to show that the death of the insured was caused by external, violent, and accidental means within the meaning of the policy.

The court held that there was no disputed question of fact to be

submitted to the jury, and ruled that a verdict should be directed. Thereupon the parties entered into the following stipulation:

" It is stipulated that the court may direct a verdict in the absence of the jury with the same force and effect as if the jury were present."

If the death of the insured was caused by accidental means within the meaning of the policy, a verdict should be directed for the plaintiff, if not, a verdict should be directed for the defendant. It is, therefore, necessary to determine the meaning of the word " accidental " as used in the policy. Etymologically, the word " accident " is derived from the Latin " ad " and " cadere " which is literally interpreted as " to befall " and thus means " a happening." It has, however, acquired the meaning of a happening or event out of the usual order of things or not reasonably to be anticipated. Webster defines it as " an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and, therefore, not expected; " and Bouvier defines it as " an event which, under the circumstances, is unusual and unexpected by the person to whom it happens." There are many other definitions given by various authorities, including courts of law, and in all of them the chief element is the unexpectedness of the event on the part of the person to whom it happens.

These definitions are not to be taken so literally that any event however natural and usual it may be, can be regarded as an accident if actually unexpected. Rather these definitions are to be taken as meaning that the event is such as would not reasonably be anticipated by a person situated as was the one to whom the event occurred, whether he actually had anticipated it or not. This is in accordance with the presumption that a person intends the natural and probable consequences of his acts and, accordingly, if the consequences are natural and probable, he will not be heard to say that he did not intend them. In this view any occurrence which naturally and probably results from the situation in which a person voluntarily places himself under such circumstances that he can foresee, or will be presumed to foresee the result must be held to be expected by him and is not, therefore, in any proper sense an accident. (*Paul* v. *Travelers' Insurance Co.*, 112 N. Y. 472; *Appel* v. *Ætna Life Insurance Co.*, 86 App. Div. 83; 1 C. J. 429, §§ 73 and 77, note, citing *Fidelity, etc.*, v. *Stacy*, 143 Fed. 271; *Taliaferro* v. *Travelers' Protective Assn.*, 80 id. 368.)

The decision which comes nearest to the present upon the facts is *Railway Mail Association* v. *Moseley* (211 Fed. 1). In that case the insured was about to be arrested by a police officer for a misde-

meanor; he resisted arrest by drawing a pistol and shooting at the officer thereby wounding him in the back. The officer pursued the insured, who fled, and during the pursuit the officer shot at insured and killed him. The similarity of the two cases rests in the fact that the insured was slain by a police officer while in flight after the commission of a felony, for in the *Moseley* case the insured had committed a felony by wounding the police officer. The difference between the cases is that in the *Moseley* case the police officer did not claim that he killed the insured because he was resisting arrest nor that he, the officer, fired for the purpose of effecting an arrest, but justified his action in shooting solely on the ground of self defense. In the *Moseley* case there was a clause in the policy relieving the insurer from liability for death resulting from the insured's own vicious conduct. The court charged the jury in substance, that if the police officer killed the insured in revenge for his own injuries and not for the purpose of arresting him or in self defense the plaintiff would be entitled to recover, but that if the insured was slain by the officer in attempting to make an arrest for a felony or in self defense the plaintiff would not be entitled to recover.

In the present case there is no clause in the policy corresponding to the vicious conduct clause in the *Moseley* case, nevertheless the same reasoning is seen to apply. If the conduct of the insured was such as to show that he voluntarily put himself in a position where he should expect that the natural and probable result would be that the police officers would fire at him and his companions, he was voluntarily assuming the risk of being killed and his death was not an accident. (1 C. J. 429, § 73.)

In the present case there is no room for the alternative suggestions of revenge or unprovoked action on the part of the police. The only reason which can be assigned for the shooting is the effort to make the arrest. The insured knew that he and his companions had committed a felony, he and they were aware that they were being pursued by the police and they must be presumed to have known that the natural result of their flight was to induce the police to shoot at them for the purpose of stopping them. Therefore, the shooting was a natural and probable result of their flight and the death of the insured a natural and probable consequence thereof also.

It is suggested that the insured not being in control of the stolen car, the jury might have found that the flight was not his voluntary act. The answer is that the insured, having engaged with his companions in the joint commission of a felony, the acts of one are the acts of all. (Penal Law, § 2.)

It is also suggested that the driver of the car having been already killed when the shot which killed the insured was fired, and the car having been stopped by the death of the driver, the shooting of insured was an unnecessary act and, therefore, not to be anticipated or foreseen. The court will not, however, indulge in refinements of this character. The insured was bound to anticipate that the police would fire so long as they considered it necessary to do so, and on the evidence it appears that they had considered the second shot a necessary one for they thought the swerving of the car, because of the driver's death, was an attempt to ditch the police car.

It is further suggested that because the police had no specific intention of killing anybody the death must be regarded as accidental. This reasoning is fallacious. If the shot was intentional it would be argued, and justly, that the existence of an intention to kill on the part of the police would not affect the question of accident because it is the viewpoint of the insured which governs and if that argument is sound, as it has been so often held to be, the lack of intent to kill on the part of the police is of no more weight than the presence of such intent.

To state the proposition briefly, the insured voluntarily put himself in a position where he should have foreseen that a fusillade would be directed against the car in which he and his companions were escaping. He must have known that a natural and probable result of such a fusillade would be the wounding or killing of himself and his companions or of some of them. He knew the risk and intended to assume it, therefore, as a matter of law his death was not caused by accidental means (1 C. J. 429, § 73) and the plaintiff is not entitled to recover. (*Fabian* v. *Prudential Insurance Co.*, 139 Misc. 640; *Manno* v. *Metropolitan Life Insurance Co.*, Id. 848.)

It would also be against a sound public policy to permit the plaintiff to recover. When one is killed while committing a felony, his beneficiaries ought not to recover under an insurance policy that does not specifically cover the risk.

In accordance with the stipulation herein, a verdict is hereby directed in favor of defendant and against the plaintiff, dismissing her complaint on the merits, with costs, and judgment may be entered accordingly.