Louise Kalahan, Plaintiff, *v.* Prudential Insurance Company of America, Defendant.

Supreme Court, Special Term, Washington County, November 18, 1948.

*Leon M. Layden* for plaintiff.

*Francis E. Dorsey* for defendant.

Imrie, J. Under date of May 31, 1943, defendant issued a policy of insurance No. 432–203–551 to Ashley W. Kalahan, agreeing, in consideration of the weekly premium of fifty-three cents, to pay to the plaintiff, as beneficiary named in the policy, the sum of $500 upon due proof of the death of the insured. In addition, defendant also agreed to pay to plaintiff, as beneficiary, upon receipt at its home office of due proof that the death of the insured occurred as a result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means, a sum equal to the face amount of insurance in addition to the amount of insurance otherwise payable.

The insured died in the town of Wells, Rutland County, Vermont, on April 14, 1946. He had been living separate and apart from plaintiff, his wife, for some time prior to that date. She, her son Robert, aged thirteen, and daughter Catherine, aged sixteen, lived in a second-floor apartment in the town of

Wells. About three o'clock in the morning of that day insured went to plaintiff's apartment and aroused her from her sleep by tossing pebbles against the window of her bedroom. He was admitted to the apartment by his son on plaintiff's instructions. Upon entering the living room he announced, " I've locked the door. Now you can't get any help ", putting the key of the door in his pocket. Thereupon insured slapped plaintiff's face, grabbed her and then put his hands around her neck. The son Robert then appeared in the living room with a .22 calibre sports model revolver in his hand and ordered the insured to leave his mother (plaintiff) alone. Insured then lunged toward his son, who was still holding the revolver; the latter backed into a small kitchen where he was followed and cornered by insured. The revolver was then fired by the son Robert and the insured died instantly. The records of Rutland County Court, Vermont, show that a bill of indictment was filed against Robert Kalahan before the Rutland County Grand Jury, which found " not a true bill."

Defendant has paid the face amount of the policy but has refused to pay the additional or accidental death benefit on the ground that the death of insured was not caused by accidental means within the meaning of the policy. Plaintiff now sues to recover the additional sum of $500 under the policy.

The foregoing statements are taken, substantially, from the stipulation of facts upon which this cause was submitted.

Did the death of the insured occur " as a result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means * * * " ?

Insured was clearly the aggressor in the occurrence which culminated in his death. The issue so posed has been a frequent and fruitful source of litigation. The numerous conclusions reached as to whether death under such circumstances was or was not accidental are contradictory and widely divergent. In part, these divergences result from differences in the wording of the policies which were under consideration; in part, by reason of varying degrees of emphasis assigned to motives, causes and consequences. Reasoning has been philosophical, subtle and tending to verge upon the realm of metaphysics, " which has been said to be a fertile field of delusion propagated by language ". (*Szymanska* v. *Equitable Life Ins. Co.*, 7 W. W. Harr. [37 Del.] 272, 280.)

It has been held that one who concededly started a fight, during the course of which he was shot to death, met his death by accident because it did not appear the deceased knew his opponent was armed when the difficulty began though " by his course of conduct, he voluntarily assumed the risks of a fight * * *." (*Lovelace* v. *Travelers' Protective Assn. of America,* 126 Mo. 104.)

At the other extreme, we find that it has been held that one, lustfully trysting with another's wife, during the husband's absence, and shot to death by the latter on his return, did not meet his death within the meaning of the policy, as a result of bodily injury effected through accidental cause. (*McCrary* v. *New York Life Ins. Co.,* 84 F. 2d 790.)

In the latter decision the court quoted, in part, the opinion in *Szymanska* v. *Equitable Life Ins. Co.* (*supra,* pp. 278–279), " The conduct of the insured, therefore, was so tied with the result, that it became a means, an efficient co-agent in producing it, without which it would not have happened, and hence, contributed proximately to the result. The death of the insured was unexpected, unforeseen, and, in that sense, accidental. The means were not accidental." The reasoning, in the latter case, seems to me to represent the logical view and, likewise, one which is in accord with the views expressed in the courts of this State. Too great weight given to the intent of the aggressor or to theorizing on the question of what he did foresee or should have foreseen as the consequences of his aggression may well produce a result contrary to the dictates of public policy. One who voluntarily embarks upon a course of violence, criminal in nature, as here, should be held to be aware that he may not be able to control the circumstances sufficiently to avoid untoward consequences.

The correct measure for the determination of the question here at issue was stated by the late Judge CARDOZO in *Messersmith* v. *American Fidelity Co.* (232 N. Y. 161) in discussing the question of liability for negligence growing out of an improper act, " The character of the liability is not to be determined by analyzing the constituent acts, which, in combination, make up the transaction, and viewing them distributively. *It is determined by the quality and purpose of the transaction as a whole.*" (Emphasis supplied.)

It must be presumed " that a person intends the natural and probable consequences of his acts and, accordingly, if the consequences are natural and probable, he will not be heard to

say that he did not intend them. In this view any occurrence which naturally and probably results from the situation in which a person voluntarily places himself under such circumstances that he can foresee, or will be presumed to foresee the result must be held to be expected by him and is not, therefore, in any proper sense an accident." (*Piotrowski* v. *Prudential Ins. Co. of America*, 141 Misc. 172. See, also, *Murray* v. *New York Life Ins. Co.*, 96 N. Y. 614; *Gaines* v. *Fidelity & Cas. Co.*, 111 App. Div. 386; *Fabian* v. *Prudential Ins. Co.*, 139 Misc. 640; *Raven Halls, Inc.*, v. *United States Fidelity & Guar. Co.*, 142 Misc. 454.)

Here insured voluntarily put himself in the position of an aggressor. He obtained entrance to his wife's apartment at an unseemly hour; there he at once embarked upon a course of violence in attacking her. The son, following a most human and natural instinct, sought to protect his mother with the threat of a revolver. Insured then directed the course of his violence against the son, by gesture and action, and in so doing was shot to death. Every step in the affair leading to the tragedy — " the quality and purpose of the transaction as a whole " — determines that the death resulted " naturally and probably " from the position in which insured voluntarily placed himself. The death was not accidental within the meaning of the policy.

Defendant is entitled to judgment dismissing the complaint.