Gerania Espinoza and Maria Martinez, Appellants, v. The Equitable Life Assurance Society of the United States, Appellee.

**Gen. No. 45,453.**

Opinion filed December 18, 1951. Released for publication January 22, 1952.

JAMES A. DOOLEY, of Chicago, for appellants.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellee; FRANK D. MAYER, and JOHN T. MOORE, both of Chicago, of counsel.

MR. PRESIDING JUSTICE TUOHY delivered the opinion of the court.

Plaintiffs, as beneficiaries, each filed suit on a $2,000 certificate of insurance issued by the defendant in favor of each of their husbands, Pedro Espinoza and Esteban Martinez. The cases, consolidated below, were tried before a jury, resulting in verdicts in favor of both plaintiffs for the face amount of each certificate plus interest. Motion for judgment notwithstanding the verdicts was allowed, and for a new trial denied.

Insured decedents had been friends for a number of years, having been schoolboys together in Texas, and were employed by the same company in Chicago. At the time of their deaths, Pedro was twenty-three and Esteban twenty years of age. On the night of their deaths October 28, 1945 they had done considerable drinking of alcoholic beverages over a period of five or six hours at taverns in the vicinity of Halsted and Madison streets in Chicago, Illinois. Sometime around 11:45 p.m. they left a tavern known as the Monterey Bar, after a quarrel, went to the street outside, each drew a revolver and each shot and killed the other.

241

Plaintiffs maintain that under the evidence a question of fact is presented as to whether or not the deaths were accidental within the terms of the insurance policies. The pertinent provisions of each policy of insurance provided (a) that there may be no recovery unless the insured's death is caused directly and exclusively by external, violent and purely accidental means; (b) that there may be no recovery where the insured's death was caused directly or indirectly, wholly or partly, by "participation in or consequence of having participated in the committing of a felony"; (c) that there must be submitted to the defendant company as a condition precedent to recovery, within 90 days of the insured's death, due proof that said death was caused "directly and exclusively by external, violent and purely accidental means."

The defendant maintains (1) that the deaths were not caused by "purely accidental means" within the meaning of the policies; (2) that both of the insureds were at the time of the deaths participating in or had participated in the commission of a felony; and (3) that due proof that the deaths of both insureds were caused by accidental means was not submitted to defendant within the time and manner required by the certificates of insurance.

The evidence is undisputed that the death of each insured was caused by the other in an affray or duel in which both voluntarily participated. Under such circumstances there can be no recovery under the terms of the policy which provides, as a condition for recovery, that death must be caused by "purely accidental means." The general principle of law governing such a circumstance is stated in Couch on Insurance, volume 5, section 1158, at p. 4068:

"Death or injury during assault or altercation. . . . Injuries sustained by an insured in an encounter brought about by his assault upon another with a

deadly weapon, or upon one who he knew had such a weapon, are not sustained by accident or by accidental means, since in such a case the injury or death is the natural and probable consequence of his own act. And this, although the assailant did not know that his victim was armed."

The text is supported by *Hutton v. States Accident Insurance Co.*, 267 Ill. 267; *Cory v. Woodmen Accident Co.*, 333 Ill. 175; *Taliaferro v. Travelers' Protective Ass'n*, 80 Fed. 368 (C. C. A. 8, 1897); *McNamara v. Metropolitan Life Insurance Co.*, 134 N. J. L. 231, 46 Atl. (2d) 798 (1946); *Meister v. General Accident Corp.*, 92 Ore. 96 (1919); *Ziolkowski v. Continental Casualty Co.*, 365 Ill. 594.

Furthermore, the evidence before us indicates that the death of each insured occurred as a result of a felony in which both participated. Shortly before the duel which resulted in their deaths, decedents were cursing each other and quarreling bitterly in the tavern. "Both were fighting mad and hurling epithets at each other," according to uncontradicted testimony. Decedents ignored counsel of a bystander not to fight. Espinoza challenged his opponent with the remark, "I don't care who I kill tonight," and Martinez, accepting the challenge, said, "I will show you that I am just as good a man as you are"; whereupon each leveled a gun at the other and fired the fatal shots. Thus occurred assaults with deadly weapons terminating in mutual homicides.

█ Plaintiffs argue that inasmuch as both decedents had been drinking heavily over a period of five or six hours they were bereft of reason and that the questions of whether or not the deaths were caused by accidental means and whether or not decedents were killed while participating in a felony were questions of fact for the jury. While it is true that the evidence

indicates that both men had reached such a degree of intoxication as to cause them to act in a manner in which it may well be assumed they would not have acted had they been sober, there is no evidence that either was entirely bereft of reason. On the contrary, their activities immediately prior to their deaths indicate the use of reason, even though exercised in a highly abnormal fashion. There was a challenge issued by one and accepted by the other, preceded by a quarrel; both walked from the saloon, where other persons were present who might be injured by indiscriminate gunfire, to the street outside; each was in possession of a pistol which he was able to draw, aim and fire. This conduct would seem to indicate an ability on the part of each to respond to emotional stimuli and to formulate and effectuate a tragic intention. These facts tend to distinguish this case from the cases of *Williams v. Prudential Ins. Co. of America,* 271 Ill. App. 532, where the insured suddenly went insane, struck and beat his wife, broke up furniture, seized a rifle from his room, and was killed while in the act of shooting his wife and police officers who had been called; and *Zimmerman v. Southern Surety Co.* (Mo. App.), 241 S. W. 95, and *Hutson v. Continental Casualty Co.,* 142 Miss. 388, 107 So. 520, where the insureds were innocent bystanders who were killed by intoxicated persons where no quarrel preceded the shooting and no cause or motive for the acts whatsoever appeared from the testimony.

Plaintiffs also cite the case of *Cory v. Woodmen Accident Co.,* 253 Ill. App. 20, reversed in 333 Ill. 175. The *Cory* case and the therein cited case of *Hutton v. States Accident Insurance Co.,* 267 Ill. 267, far from supporting plaintiffs' position, are practically decisive against it. In the latter case, the court said (p. 269):

''Where one voluntarily and deliberately engages in a fight or brawl and places another in a position where

he, too, must fight to defend himself, it is a natural result, and one known to all sensible men as likely to follow, that one or both of the combatants will receive more or less serious injury. As to whether the assailant or the one assailed would be the more likely to be injured would depend upon the comparative strength and skill of the antagonists as well as upon the fortunes of the combat.''

In the *Cory* case the court said (p. 182):

''. . . However, in our opinion, with the warning which Cory had, any man with ordinary intelligence and prudence would have had reason to believe that Seybold was armed, and could have reasonably foreseen and expected that if Cory's voluntary and unnecessary advance was continued upon the boy that serious injury from his use of such deadly weapon would in all probability result. The shooting of Cory under the conditions and circumstances cannot be said to have been an accident, and therefore the results flowing therefrom cannot be held to be due to an accidental cause. Hence there could be no recovery under Cory's accident indemnity contract.''

The several other cases cited by plaintiffs are inapplicable to the facts of the case before us.

Even though decedents had been bereft of reason as a result of intoxication, such incapacity was voluntarily incurred, and such conduct does not alter the rule that their deaths were not caused by purely accidental means. *Mullaney v. Prudential Ins. Co.,* 125 F. (2d) 900 (C. C. A. 5, 1942); *Raven Halls, Inc. v. U. S. F. and G. Co.,* 142 Misc. 454, 254 N. Y. Supp. 589 (1932); *Kinavey v. Prudential Insurance Co.,* 149 Pa. Super. Ct. 568, 27 Atl. (2d) 286 (1942). Neither would intoxication be a defense to manslaughter.

██ Plaintiffs urge that the record is silent as to who was the aggressor and that in the absence of such

proof the cases cited bearing on accidental means are not applicable. That one may have been more aggressive in the quarrel which led to the fatal shooting is immaterial. As we have pointed out, both voluntarily participated in the deadly duel.

We are of the opinion that judgment notwithstanding the verdicts was properly entered, and accordingly the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

SCHWARTZ and ROBSON, JJ., concur.