Gladys Wylie, Plaintiff-Appellee, v. Union Casualty and Life Insurance Company, Defendant-Appellant.

Gen. No. 11,086.

Second District, First Division.
December 13, 1957.
Released for publication December 30, 1957.

Kevin D. Kelly and Tobias G. Barry, of LaSalle, Philip D. Goodman and Lester E. Williams, of Chicago, and Safford & Hunt, of Peoria, for appellant.

Berry & O'Conor, of Streator, for appellee.

JUSTICE SPIVEY delivered the opinion of the court.

The plaintiff, Gladys Wylie, is the beneficiary under a group disability insurance policy issued by the defendant, Union Casualty and Life Insurance Company, to plaintiff's deceased husband, Leslie Wylie. Plaintiff commenced her action in the Circuit Court of LaSalle county to recover under a double indemnity feature in the policy for her husband's death allegedly result-

ing from accidental bodily injury. From a judgment for the plaintiff on a jury verdict, defendant appeals.

The principal contention urged by the defendant is that the death of the assured was not the result of accidental bodily injury, and so not compensable under the terms of the policy.

Plaintiff and the deceased married in May of 1952. As a Christmas present in that same year, the deceased gave to the plaintiff a single shot twenty-two rifle. She had very little previous experience with firearms and subsequent to that Christmas to the date of Leslie Wylie's death had fired the rifle only on a few occasions and on each of those occasions had demonstrated her ineptness at marksmanship.

During their married life the deceased had on several occasions struck the plaintiff. Her resistance to these attacks appears to have been limited to one occasion wherein she struck him with her shoe while he was strangling her. These assaults upon the person of the plaintiff always occurred at a time when the deceased was intoxicated.

On June 17, 1954, at about noon, the plaintiff drove the family car to her husband's place of work and together they drove away. They stopped to pick up some beer and proceeded to drive around while the deceased consumed several cans of beer. About five o'clock they returned to their residence and the plaintiff prepared their evening meal, which was one of the deceased's favorites. Meanwhile, the deceased continued to consume more beer while sitting in his front yard. He was said to have been intoxicated at this time. An altercation ensued as a result of plaintiff's effort to get her husband to come to dinner and he twice knocked her to the floor. He then called to a neighbor boy and told him to call an ambulance and stated that he was going to send the plaintiff back to the hospital. He again

450

struck the plaintiff several times whereupon he apparently left the house.

William Hopkins, an ambulance driver from the Heitz Ambulance Service at Streator, Illinois, testified that he received a call to go to Leonore about ten miles from Streator. He believed the call to be from Mr. Wylie. He met Mr. Wylie in front of an ice cream parlor which was located about three doors from the Wylie residence. Mr. Wylie directed Hopkins to his residence and Hopkins turned the ambulance around and drove to the Wylie home. As Hopkins got out of the ambulance a lady came running out of the house saying, "You better hurry because he is going to kill her." Hopkins further testified that he entered the house and found Mr. Wylie lying face down on the living room floor. Hopkins could see Mrs. Wylie in the bedroom through a break in the drapes that were hanging in the doorway entrance to the bedroom. She was standing by the bed on the opposite side from the doorway holding the rifle, and at his request she handed the rifle to him.

The plaintiff further testified that following her husband's departure from the house she made no effort to leave the house but that she went into the bedroom, loaded the rifle, and sat on the bed. The rifle had for a long period of time been kept unloaded in the bedroom. She heard her husband return and remark, "I came back to finish the job I started"; and he came to the doorway and pushed the drapes back. At that instant she raised the rifle and fired telling him to get out. She stated she could not see her husband before he parted the drapes and when she fired she attempted to hit the side of the door casing because she didn't want to hit him. She said she reloaded the rifle as she was sure she had missed him. The deceased was taken to the hospital in the ambulance with the plaintiff

451

riding in the front seat. From the wound inflicted by this shot, Leslie Wylie succumbed. The exhibits disclose that the shot went through the drape before entering the body of the deceased.

Defendant argues that accidental bodily injury presupposes that (1) The assured could not reasonably foresee that his actions would naturally and probably result in his injury or death, and (2) The actual means of injury or death was also accidental and not a deliberate act which might readily result in injury or death. Defendant contends that plaintiff has failed to sustain the burden of proof as to either of these conditions.

Defendant's first premise meets with our whole hearted concurrence, however, we are unable to agree with the defendant as to its second condition when applied to the terms of the policy issued by the defendant in this case.

While there is some authority to the contrary, 26 A.L.R.2d 402, succinctly states the majority thinking among the courts of this country wherein it is stated, "While general language used in some of the decisions might be taken to indicate the adoption of a harsher rule, the concensus of the cases seems to be that the mere fact that a person insured against accidental injury or death voluntarily and wrongfully assaulted another will not be sufficient to characterize as nonaccidental all possible injuries which he receives in the course or as a consequence of his attack, but that such injuries may be regarded as accidental unless they were a natural or probable result of the insured's actions, reasonably foreseeable by him or by a reasonably prudent man in his position." This majority rule has been followed in Illinois. Cory v. Woodman Accident Co., 333 Ill. 175, 164 N. E. 159; Espinoza v. Equitable Life Assurance Society, 345 Ill. App. 240, 103 N.E.2d 149; and Hutton v. States Accident Insurance Co., 267 Ill. 267, 108 N. E. 296.

Whether or not an assured who is an aggressor should reasonably foresee the consequence of his actions resolves itself into a factual question to be answered in the light of the circumstances of the individual case.

Exceptions to this general pronouncement appear to fall in several well defined categories wherein it has been almost universally held in like or similar language that the assured by his actions should have reasonably foreseen that his actions would probably result in his injury or death and consequently his injury or death was not accidental. Only two of these exceptions need be noted as appearing to have any application to the instant case. They are: (1) Where the assured knew he was attacking another who was armed, Thom v. Metropolitan Life Insurance Co., 2 So.2d 269 (La.); Podesta v. Metropolitan Life Insurance Co., 150 S.W.2d 596 (Mo. App.); Cory v. Woodman Accident Co., 333 Ill. 175, 164 N. E. 159; Kalahan v. Prudential Insurance Co. of America, 84 N.Y.S.2d 433, and (2) Where like means of attack and counter-attack are employed, Hutton v. States Accident Insurance Company, 267 Ill. 267, 108 N. E. 296.

In the Hutton case, two powerful men engaged in a fist fight brought on by the assured who was injured. The court in denying liability for "injuries effected exclusively by external, violent, and accidental means" held that the results were the natural and probable result of assured's act. It is interesting and significant that the court noted, "In this case a different question would be presented if Huddlestun had resisted the attack on appellee by use of a deadly weapon; but instead of that it is conclusively shown that the assault was met in kind and that he used no more than the necessary means which would have been employed by any reasonable man in his defense."

Our review of the decisions leads us to the conclusion that the rule is in no wise altered merely because the altercation was a domestic or family quarrel. The same rule of foreseeability attaches to the assured aggressor. We quote the rule which has been well stated in 26 A.L.R.2d 423, "The circumstance that the altercation which the insured instigated and in which he was injured or killed, although involving a deadly weapon, was a not unusual interruption of the parties' familial tranquility, and that on previous occasions such disputes had never occasioned serious results, has been relied upon in several cases as indicating that the insured's injury or death was not a reasonably foreseeable consequence of his attack, so that it might properly be found to have been accidental within the terms of an insurance policy." Akins v. Illinois Bankers Life Assur. Co., 203 P.2d 180; Mahar v. Metropolitan Life Ins. Co., 23 N.Y.S.2d 299; Penn Mut. Life Ins. Co. v. Nunnery, 167 So. 416 (Miss.); Hutcherson v. Sovereign Camp, WOW, 251 S. W. 491 (Tex.); Riggins v. Equitable Life Assur. Co., 14 S.E.2d 182 (Ga. App.).

■ We now turn to defendant's contention that the means of injury or death must be accidental and not a deliberate act which might readily result in injury or death. Previously, we noted in this opinion that we do not so hold in this case. Illinois recognizes the distinction between a policy covering *accidental injury or death* and that of a policy insuring injury occasioned by *accidental means*. Wayne v. The Travelers Insurance Co., 220 Ill. App. 493.

We are unable to find any cases in Illinois dealing with the precise question presented in this appeal. The policy in the instant case insured against accidental bodily injury or death as opposed to injury or death resulting from accidental means.

In Hutcherson v. Sovereign Camp, WOW, 251 S. W. 491 (Tex.) recovery under a policy insuring for loss by

454

accident was allowed where assured's wife shot and killed her husband with whom she had just before engaged in an altercation and who was at the time armed with an axe and approaching their home. The court held that the assured could not foresee the consequences of his act and that "The Court of Civil Appeals therefore correctly determined that the issue as to whether the killing was, or not, an accident, must be determined from the standpoint of the assured. An event resulting in death may be objectively accidental, though the event causing such accident may subjectively arise and result intentionally on the part of the person responsible for the subjective cause." (Citing cases.)

■ We therefore hold that under a policy insuring against accidental injury or death, the means of injury or death does not necessarily need to be accidental providing the assured could not reasonably foresee that his actions would naturally and probably result in his injury or death.

■ ■ The factual situation has heretofore been set out in some detail in this opinion. Whether or not the assured should be chargeable with foreseeing the probable results of his actions was a question of fact for the jury to determine. The jury has resolved the question in favor of the plaintiff and we are not disposed to say that their finding was clearly against the manifest weight of the evidence.

The plaintiff and her husband had had numerous marital altercations none of which resulted in any substantial resistance by the plaintiff beyond her striking him with a shoe on one occasion. Both parties knew that the lethal weapon had remained in the bedroom unloaded for a year and a half and on no prior occasion when the assured attacked his wife had she used the rifle nor had she even threatened to use it. Mr. Wylie had called the ambulance for the purpose of his wife's

use and so thought when he re-entered the house a few seconds before he was shot. The evidence is in conflict as to whether he could see his wife in the bedroom or whether he could see that she was armed. An examination of the testimony and the exhibits in addition to the fact that no other words were spoken would warrant the jury in finding that the assured was unaware that his wife was armed. From plaintiff's exhibit three and the position of the assured's body as established by testimony, the evidence leads to but one conclusion and that is that the fatal shot penetrated the drape in the bedroom doorway before the assured entered the bedroom.

The judgment of the Circuit Court of LaSalle county is therefore affirmed.

Judgment affirmed.

DOVE, P. J. and McNEAL, J., concur.