Jacquino Manno, as Administratrix, etc., of Biagio Manno, Deceased, Plaintiff, *v.* Metropolitan Life Insurance Company, Defendant.*

City Court of New York, Bronx County, April 23, 1931.

*See, also, *Fabian* v. *Prudential Insurance Co.* (139 Misc. 640).

*Louis Susman,* for the plaintiff.

*Edward M. Grout* and *Paul Grout* [*Dean Potter* of counsel], for the defendant.

EVANS, J.   Three police officers had recognized and were attempting to apprehend plaintiff's decedent, Biagio Manno, and another, Carmasino, in a dance hall in New York city.   One of the officers, Detective Fitzpatrick, placed his hand on Biagio Manno's shoulder and on Carmasino's shoulder and told them he was a police officer. Whereupon Carmasino drew a gun and ran toward a door where the other police officers were stationed.   Fitzpatrick called to the other officers to " get " Carmasino.   Meanwhile Fitzpatrick struggled with Manno, who also drew a gun.   Fitzpatrick tried to save himself from Manno's gun, and during the struggle succeeded in reaching his own gun, with which he shot and killed Manno. Detective Fitzpatrick did not shoot to kill willfully or purposely, but solely in apprehension for his own life and to protect himself from what he thought might be done by Manno's gun.

The only exception the policy contains, to the accidental clause, is death by self-destruction, participation in aviation or aeronautics, while in the military or naval service in time of war, or if death is caused or contributed to directly or indirectly or wholly or partially by disease or by bodily or mental infirmity.   The manner in which the death occurred, at bar, does not come within any of the exceptions.   Under the circumstances, was the death of Biagio Manno " accidental " within the terms of the policy containing the usual provision for double indemnity, if the death were caused by " external violent and accidental means? "

The courts of other States and the Federal courts have held that, where one acts as the aggressor, in an attack, under circumstances which would render a homicide likely as the result of his own misconduct, death was not accidental within the meaning of similar clauses, in life insurance policies.   (*Taliaferro* v. *Travelers Protective Assn.,* 80 Fed. 368; *Clay* v. *State Ins. Co.,* 174 N. C. 642; *Hutton* v. *States Accident Ins. Co.,* 267 Ill. 267; *Occidental Life Ins. Co.* v. *Holcomb,* 10 F. [2d] 125; *Meister* v. *General Accident Co.,* 92 Ore. 96; *Price* v. *Occidental Life Ins. Co.,* 169 Cal. 800; *Postler* v. *Travelers Ins. Co.,* 173 id. 1; *Prudential Casualty Co.* v. *Curry,* 10 Ala. App. 642.)   Where one was the aggressor and struck another, injuring his own hand, while striking, and dying from blood poisoning as a result, he was not killed by accidental means.   (*Fidelity & Casualty Co.* v. *Stacey's Executors,* 143 Fed. 271.)   Those judicially executed for crime do not die accidentally.

(*Diamond* v. *N. Y. Life Ins. Co.*, 42 F. [2d] 910; *Burt* v. *Union Central Life Ins. Co.*, 187 U. S. 362.) Where the aggression was not wrongful, and, from it, death could not reasonably be anticipated, it is said to be accidental. (*Lovelace* v. *Travelers' Protective Ass'n Co.*, 126 Mo. 104.) In *McKeon* v. *National Casualty Co.* (216 Mo. App. 507) the facts were similar to those at bar, but there the decedent might not have known that those who tried to apprehend him were police officers, and might have supposed himself unlawfully attacked, and retaliated by shooting, as a result of which he was killed, by an exchange of shots.

I gather from the foregoing that one who wrongfully attacks, under circumstances where one ought reasonably to believe that a counter attack might take his life, is not killed by accidental means.

At bar, the police officer did nothing more than place his hand on Manno's shoulder and say, "I am a policeman." That did not warrant Manno in drawing a gun. His act in doing so cannot be construed in any other way than an attack on the police officer, unnecessary and wrongful. He became a wrongful aggressor when he drew his gun at such slight provocation. He should have reasonably expected and known that the police officer possessed a gun which he might use in self-defense.

There is no evidence in the case to tell us whether the police officers had a warrant for Manno's arrest, nor why they wished to arrest him, nor whether Manno's gun was loaded. I do not think the absence of evidence in these respects alters the situation. The police officer, on being confronted with a gun, would naturally believe it was loaded. Nor can we presume that the police officers acted otherwise except within the scope of their duties.

While there is no judicial authority in this State on the subject, I see no reason for departing from the weight of the authority of the courts of the other States and the Federal courts. The plaintiff may have judgment for the face amount of the policy but not for the double indemnity. Submit findings accordingly.