EMMA McQUADE, Plaintiff, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

JOAN McQUADE, Plaintiff, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

Municipal Court of New York, Borough of Queens, Sixth District, January 25, 1938.

*David Wills*, for the plaintiffs.

*Solon Weil*, for the defendant.

PETTE, J. This is a motion, pursuant to section 307 of the Civil Practice Act and rule 120 of the Rules of Civil Practice, for an order appointing and designating an official referee to summon and take the depositions of Dr. Howard Neail, assistant medical examiner, a detective, a policeman and several other witnesses to certain circumstances surrounding the death of Lawrence McQuade; such depositions to be used by the defendant in opposition to plaintiffs' motion for summary judgment.

The actions were brought by the plaintiffs to recover alleged accidental death benefits claimed to be due pursuant to the terms and provisions of life insurance policies.

The plaintiffs allege that the insured, Lawrence McQuade, died as a result, directly and independently of all other causes, of bodily injury effected solely through external, violent and accidental means. In the moving affidavit for summary judgment the plaintiffs allege that the insured engaged in a fist fight with one William Mellisinos; that the insured was struck a blow which caused him to fall; that upon being taken to the hospital he was pronounced dead; that prior thereto the insured was enjoying good health.

The defendant company states that it is its intention to show, in opposition to the motion for summary judgment, by the testimony of Dr. Howard Neail, the assistant medical examiner of the city of New York, that he performed an autopsy upon the deceased insured; that the examination showed the presence of a fair amount of alcohol in the insured's brain; and that the insured had nothing more than superficial abrasions; that death was not due to any accident but was caused by shock and acute alcoholism.

The defendant's affidavit alleges its intention to show by the testimony of the other witnesses sought to be examined that the insured had indulged in a large quantity of whisky and beer at a certain time and place; that he had allegedly started the quarrel; and other facts and circumstances material upon the issue of " accidental death " as defined within the provisions of the insurance policy.

The general rule is that where a person not a party, whose affidavit or deposition is necessary for use upon a motion, refuses to make an affidavit of facts which the party desiring his testimony believes are within his knowledge, his testimony may be taken by deposition. (Civ. Prac. Act, § 307.) In accordance with this statutory provision, rule 120 of the Rules of Civil Practice provides, in part, as follows: " Where a party intends to make or oppose a motion in a court of record and it is necessary for him to have the affidavit or deposition of a person not a party to use on the motion, the court or a judge authorized to make an order in the case may make an order in the case appointing a referee to take the deposition of such person. The order must be founded on proof by affidavit that the applicant intends to make the motion, or that notice of a motion has been given which the applicant intends to oppose. The affidavit must specify the nature of the action and must show that the deposition is necessary thereon and that such person has refused to make an affidavit of the facts which the applicant verily believes are within his knowledge. * * * The person to be examined may be subpœnaed and compelled to attend as on a trial and may be cross-examined by the party on whose attorney the notice has been served. The deposition must be taken by question and answer and be subscribed by the witness and must be delivered to the attorney for the party who procured the order unless such order provides a different disposition thereof."

This provision covers all cases where a party wishes to use a deposition upon a motion, whether before or after judgment (*O'Connor* v. *McLaughlin,* 80 App. Div. 305); and it applies to a motion in a court of record either in an action or in a special proceeding. (1 Carmody's New York Practice, p. 574.)

The plaintiffs raised the objection that the defendant has not shown that the depositions are necessary. Such objection would be valid if by " necessary " were meant absolutely essential. This was not the intention of the Legislature. The word " necessary " has been held to mean merely " needful " and not " indispensable." (*Terry* v. *Ross Heater & Mfg. Co., Inc.,* 180 App. Div. 714, 715.) The persons herein sought to be examined before trial in support of the motion apparently have knowledge of the facts and circumstances surrounding the death of the insured, and such information

and facts are relevant in the instant application. (*Reiss* v. *Ballard Realty & Mortgage Corp.*, 150 Misc. 34.)

In the early leading case of *Wallace* v. *Baring* (2 App. Div. 501) a similar application was made. The Appellate Division held: " Such a deposition is simply an affidavit by a person not a party who will not voluntarily testify to facts within his knowledge, which, if necessary for the use of a party to an action upon a motion, the court can compel him to give. Under such an order, however, we can find no warrant for the issuing of a *subpœna duces tecum.*"

The statute does not authorize a fishing examination to ascertain whether a person may or may not know something material to be proven on the motion, nor does it authorize an examination upon the genuine merits of a controversy. (1 Carmody's N. Y. Practice, p. 576.)

The granting of the order lies in the discretion of the court or judge (Rules Civ. Prac. rule 120); if the order is granted, the person to be examined may be subpœnaed and compelled to attend as on a trial. He may be cross-examined by any party on whose attorney the notice has been served. The deposition must be taken by question and answer and must be subscribed by the witness, and may be used upon the motion in aid of which it was taken.

It has been repeatedly held by the courts of this State that where the insured voluntarily places himself in a position where he could foresee the natural and probable consequences of his act, his death is not the result of accidental means within the meaning of the terms of policies similar to the one in suit. The word " accidental " as used in a policy of life insurance has been defined in numerous cases.

In *Manno* v. *Metropolitan Life Ins. Co.* (139 Misc. 848) the court held: " The courts of other States and the Federal courts have held that, *where one acts as the aggressor, in an attack,* under circumstances which would render a homicide likely as the result of his own misconduct, death was not accidental within the meaning of similar clauses in life insurance policies. (*Taliaferro* v. *Travelers Protective Assn.*, 80 Fed. 368; *Clay* v. *State Ins. Co.*, 174 N. C. 642; *Occidental Life Ins. Co.* v. *Holcomb*, 10 F. [2d] 125; *Meister* v. *General Accidental Co.*, 92 Ore. 96; *Price* v. *Occidental Life Ins. Co.*, 169 Cal. 800; *Postler* v. *Travelers Ins. Co.*, 173 id. 1; *Prudential Casualty Co.* v. *Curry*, 10 Ala. App. 642.) *Where one was the aggressor and struck another, injuring his own hand, while striking, and dying from blood poisoning as a result, he was not killed by accidental means. (Fidelity & Casualty Co. of New York* v. *Stacey's Executors*, 143 F. 271.) " (Italics mine.)

*Gaines* v. *Fidelity & Casualty Co.* (111 App. Div. 386; affd., 188 N. Y. 411) is directly in point. In that case the insured struck one Connors a blow and called Connors vile names. In retaliation, Connors drew a pistol and killed the insured. The court said: " The testimony quoted is quite sufficient to justify the conclusion that the deceased came to his death as the result of an assault committed by him upon the person of Connors, and that the shooting which followed it was the direct result of the assault, and that the injuries inflicted upon the deceased and which caused his death were intentional and not accidental. These facts, by the express terms of the policy, deprived the beneficiary of any right to recover upon the contract."

In the strictest sense, and dealing with the region of physical nature, there is no such thing as an accident. The point of view of the court in fixing the meaning of an accident under this type of contract must not be that of a scientist; it must be that of the average man. Such a man would say that the direct result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked for mishap, and so an accident. This test — the one that is applied in the common speech of men — is also the test to be applied by courts. (*Lewis* v. *Ocean Acc. & G. Corp.*, 224 N. Y. 18, 21.)

Three general rules applied by the court in this type of contract are: (1) When an accident caused a diseased condition, which together with the accident resulted in the injury or death complained of, the accident alone is to be considered the cause of the injury or death; (2) when at the time of the accident the insured was suffering from some disease, but the disease had no causal connection with the injury or death resulting from the accident; the accident is to be considered as the sole cause; (3) when at the time of the accident there was an existing disease, which, co-operating with the accident, resulted in the injury or death. the accident cannot be considered as the sole cause or as the cause independent of all other causes. (*Smith* v. *Mass. Bonding & Ins. Co.*, 207 App. Div. 682; affd., 241 N. Y. 558.)

Death or injury resulting from a voluntary act of the insured, every detail of which was usual and intended, so that nothing was unforeseen except the resulting injury, was not caused by accidental means. (*Appel* v. *Ætna Life Ins. Co.*, 86 App. Div. 83; affd., 180 N. Y. 514.)

In determining liability under a policy providing for double indemnity in case of an accidental death, a person is presumed to intend the natural and probable consequences of his acts. An occurrence which naturally and probably results from a situation in which a

person voluntarily places himself under foreseeable circumstances is not an accident within a policy providing for double indemnity in case of accidental death. Thus, the death of the insured, shot by a police officer attempting to effect arrest of the insured, fleeing after the commission of a felony, was not an accident within the policy providing for double indemnity in case of " accidental " death. (*Piotrowski* v. *Prudential Ins. Co.*, 141 Misc. 172; *Fabian* v. *Prudential Ins. Co.*, 139 id. 640; *Manno* v. *Metropolitan Life Ins. Co.*, Id. 848.)

Similarly, no recovery may be allowed where the insured dies of heart trouble, aggravated by an injury received in a railroad accident, for the reason that where an existing disease, co-operating with an accident, results in death, it cannot be said that the insured died as a result of the accidental injury, independently and exclusively of all other causes. (*Smith* v. *Mass. Bonding & Ins. Co.*, 207 App. Div. 682; affd., 241 N. Y. 558.) If the disease is dormant and harmful only if it should become progressive, and it is rendered dangerous by an accident, recovery may be had. (*Silverstein* v. *Metropolitan Life Ins. Co.*, 254 N. Y. 81.) Under the *Silverstein* decision, the court ruled that an ulcer as trivial and benign as an uninfected pimple is at most a tendency to an infirmity, and not an infirmity itself. Disease or infirmity to prevent recovery on an accident policy must be so considerable or significant that it would be characterized as such in common speech of men. (*Eastern District Piece Dye Works* v. *Travelers Ins. Co.*, 234 N. Y. 441, 453.)

Under a policy insuring against disability or death resulting directly and independently of all other causes from bodily injuries sustained through external, violent and accidental means an insurer may be relieved of liability if there existed in the insured an idiosyncratic condition of mind or body predisposing the insured to injury, which condition is so acute as to constitute a disease. A chronic and progressive nephritic condition existent for three years is an idiosyncratic condition of this degree and nature. Accordingly, an insurer was not held liable where it appeared that the insured died twenty days after having been involved in an automobile accident, but that the immediate cause of his death was not his accidental injury, but the nephritic condition above described. (*McMartin* v. *Fidelity & Casualty Co.*, 264 N. Y. 220.)

For strictly procedural purposes, in determining this motion, it is unnecessary to decide the difficult questions of law which may be involved in the trial of this action. The defendant need not prove its defense as a matter of law in order to obtain intermediary relief which it seeks by the present motion. The testimony sought to be

elicited from the witnesses may tend to prove the facts showing that the insured did not sustain the bodily injuries which would come within the provisions of a claim for double indemnity benefits.

For the foregoing reasons, the defendant's motion for an order under section 307 of the Civil Practice Act and rule 120 of the Rules of Civil Practice be and the same is hereby granted in all respects. Submit order.