Wilma Eagan and Wilma Eagan, as Administratrix of Estate of Joe Eagan, Deceased, Appellant, v. The Prudential Insurance Company of America, Respondent.—128 S. W. (2d) 1085.

Kansas City Court of Appeals.   March 6, 1939.

*Hunter & Chamier* and *Jerry M. Jeffries* for appellants.

*Hulen & Walden* and *Ralph M. Jones* for respondent.

*Michaels, Blackmar, Newkirk, Eager & Swanson* and *Ralph W. Hyatt* of Counsel.

SHAIN, P. J.—This is an action based upon the ·double indemnity clause of an insurance policy. One Joe Eagan held an insurance policy, issued by defendant, providing for payment of $413 upon insured's death and the further sum of $413 (double indemnity) if the insured's death resulted from bodily injuries solely through "external, violent and *accidental* means." (Italics ours.) The policy was in force when Eagan died. Defendant paid the $413 unconditionally provided for, but refused to pay the other $413 on account

of alleged accidental death, and this suit brought by Eagan's widow and administratrix (he having died intestate), was to recover said $413 for accidental death.

Eagan was shot and killed by an officer at the scene of an attempted burglary in which he and an accomplice had been engaged.

A trial was had before a jury, the jury verdict and judgment was for defendant, and plaintiffs appealed. The case was argued and submitted to this court at its March Term, 1937, and this court reversed and remanded same. Upon *certiorari,* cause went to the Supreme Court and the opinion of this court was quashed. [See 119 S. W. (2d) 309.]

On motion of plaintiffs, wherein it was claimed that the opinion of the Supreme Court had not determined as to all of the issues, this cause was redocketed and rehearing had at the October Term, 1938.

The determining factor in this case rests upon the determination of whether or not the death of Eagan was caused by having sustained bodily injuries solely through external, violent and accidental means.

There is evidence shown from which it may be inferred that Eagan, when he was shot, had left the exact place of the burglarly and was passive at the time he was shot. However, it is shown that his associate at the time was making manifest resistance to arrest. In passing upon the aforesaid situation, this court in its first review made a distinction to the effect that although Eagan would have been guilty of the overt act of his associate in assault upon the arresting officer, still as to injury to Eagan himself, if he had abandoned, desisted and was passive and unresisting at the time, his death might come under cover provisions of the policy. In reaching this conclusion, consideration was given to paragraph No. 2 of the provisions of the policy, under head of "Exceptions."

Said paragraph being as follows:

"No accidental death benefits will be paid if the death of the insured resulted from suicide or from having been engaged in submarine or diving operations, or in aviation as a passenger or otherwise, or from military or naval service in time of war."

It will be noted that a frequent exception as to being killed or injured while engaged in commission of crime is not found in the policy.

As to the above conclusion by this court, the Supreme Court held that we were in conflict with controlling opinion of the Supreme Court and base same on a discussion of State v. Adams, 339 Mo. 926, 98 S. W. (2d) 632, 637. In this case, Adams and two accomplices were engaged in burglarizing a gasoline filling station. Being apprehended, the trio fled and were chased by Officers Green and Brown. Several hundred feet from the filling station, one of the trio shot and killed Officer Green. Adams, in the trial of his case, contended that he had abandoned the burglary. Adams was held on a first degree murder

charge, on the principle that escape was continuation of the offense and within the *res gestae*.

This case was presented to us on our former review upon the theory as above stated, to-wit: That Eagan was shot and killed after he had desisted and abandoned.

In this rehearing the appellants have filed a brief wherein we are called upon to review as to instructions given and refused in the trial in the circuit court. In our first review, we refused to review as to instructions for the reason that same were deficient as to assignment of reasons. In the new brief our rules have been complied with.

The above explains the following statement in the opinion of the Supreme Court filed with its mandate, to-wit: "It seems to be conceeded that if Eagan was killed in the commission of a felony there can be no recovery as for accidental death."

As based upon the former opinion of this court, with consideration of instructions not gone into, the above statement presents the exact situation as considered by the Supreme Court on *certiorari*.

In reviewing this case, from the standpoint as presented in the appellants' brief filed upon rehearing, we must give consideration of a contention that was not before the Supreme Court, to-wit: The appellants present instructions, which were refused, that permit recovery regardless of the question of whether or not Eagan was killed in the commission of a felony.

Instructions C and D, offered and refused, best present the new question to be determined. The instructions are as follows:

## "C"

"The court instructs the jury that so far as this case is concerned the policy of insurance sued on provides that if the said Joe Eagan should meet his death by violent, external and accidental means the defendant will pay double indemnity. The court therefore instructs you that it is immaterial what the said Eagan was doing or engaged in at the time he received the injury which resulted in his death. If you find the injury was violent, external and accidental your verdict should be for the plaintiffs.

## "D"

"The court instructs the jury that even though you find the insured, Joe Eagan, was engaged in the violation of the law, committing a burglary or other crime and while so engaged from violent, external and accidental means met his death, the fact that he was so engaged is no defense to plaintiffs' action, and your verdict on that account should be for the plaintiffs."

From a careful reading of the opinion State ex rel. Prudential Ins. Co. v. Shain, *supra*, we conclude that to follow same we must hold that the evidence in the case at bar is clearly to the effect that Eagan's killing was a part of the *res gestae* of the burglary that he and his companion were engaged in when the officers came upon the scene.

In other words, Eagan met his death in the commission of a crime and as a result thereof.

The payment of a double indemnity provided for in the insurance contract was predicated on death resulting from accident. As applied to insurance contracts, ELLISON, J., of this court in Collins v. Fidelity & Casuality Co., 63 Mo. App. 256-257, says:

"An injury not anticipated and not naturally to be expected as a probable result, by the insured, though intentionally inflicted by another is an accidental injury within the terms of the policy."

The above is supported by citations from other States, and Lovelace v. Ins. Co., 126 Mo. 104. The Collins and Lovelace cases affirmatively set forth conditions under which such means would be accidental. For the purpose of review we accept these cases as our guide and proceed to give consideration of the fact as to whether or not the death of Eagan, under the facts in evidence in this case, comes within the meaning of "accident" as above defined.

The case of Lovelace v. Ins. Co., we find is cited with approval by the Court of Civil Appeals of Texas in American National Ins. Co. v. Garrison, 97 S. W. (2d) 534. We are impressed with the reasoning of the Texas opinion, *supra,* and quote with approval from paragraph No. 5, 1. c. 536, as follows :

"The rules and principles of law declared in the Bryant, Francis, and other cases are only applicable to the instant case in considering whether voluntary conduct of the insured was conclusively, as a matter of law, shown to have been the means by which the death of the insured resulted. From a reading of the authorities and consideration of the question we are of the opinion that a voluntary act of a third person intended by such third person to result in the injury or death of an insured under policy provisions like those here involved is, as a matter of law, the accidental means of such death or injury, unless as a cause it was one of a sequence of causes set in motion by voluntary conduct of the insured under such circumstances that such voluntary conduct of the insured be technically the proximate cause of such injury or death. Where voluntary conduct of the insured is established as the proximate cause of the injury or death, the further fact is at the same time established that the willful act of the third person was not an accidental means, or at least not solely an accidental means by which the injury or death resulted."

We conclude that instructions C and D and other instructions refused were in error in that same leaves out the element of consideration as to whether or not the voluntary act of Eagan be technically the proximate cause of his death. In other words, we hold that the question of whether or not Eagan's killing was a part of the *res gestae* of the burglary is material to the issue.

In the consideration of this cause, we are not called upon to determine the question as to whether or not Eagan's voluntary conduct

was, as a matter of law, the proximate cause of his death. Such question was given to the jury as an issue of fact and, we conclude, properly so.

The trial court gave upon its own motion Instruction No. 2-B as follows:

"The court instructs the jury that if you believe from the evidence and all the facts and circumstances detailed in evidence that the death of the insured, Joe Eagan, was the direct result of external, violent and accidental means, then your verdict should be for the plaintiffs in this case. And in this connection you are instructed that if you believe and find from the evidence that the shooting of said Joe Eagan, as to him, was unforseen, unexpected and unusual and did not take place according to the usual course of events, and was not the natural and probable consequences of his act and conduct, then his death as a direct result of such shooting, if you find it was, was the direct result of accidental means."

The above instruction, we conclude, presented the determining issue of fact in a most favorable manner for plaintiffs. The jury having spoken, it is not within our province to interfere.

We have carefully reviewed the record and briefs filed herein and, based upon our conclusion that the killing of Eagan was a part of the *res gestae* of a burglary into which he voluntarily engaged, we conclude that no prejudicial error is shown by the record. Judgment affirmed. All concur.