**Brandi Renee MOTLEY, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE, COMPANY, et al., Defendants.**

**No. 91–2290–KHV.**

United States District Court, D. Kansas.

Aug. 6, 1993.

---

Mark A. Buchanan, William Dirk Vandever, The Popham Law Firm, Kansas City, MO, for plaintiff.

Neil L. Johnson, Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on Defendants' Joint Motion in Limine (Doc. # 21) filed March 25, 1992; Defendants' Joint Motion to Dismiss or for Summary Judgment (Doc. # 22) filed March 25, 1992; Plaintiff's Motion for Summary Judgment (Doc. # 25) filed April 1, 1992; and Defendants' Request for Oral Argument (Doc. # 35) filed May 19, 1992. Defendants are Metropolitan Life Insurance Company ("Met Life"), General Motors Corporation ("GM"), and the General Motors Life and Disability Benefits Program. Having considered the briefs of the parties and the applicable law, the Court finds that Defendants' Joint Motion for Summary Judgment should be and hereby is granted in part and denied in part for the following reasons:

### Background Facts [1]

Plaintiff, Brandi Renee Motley, is a minor child appearing through her mother and next friend, Marva Motley Ford. Plaintiff's father, Donnie Motley, Jr. ("Mr. Motley"), was a participant in the General Motors Life and Disability Plan ("the Plan"), an employee benefit plan covered by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (1988). GM was the Plan Administrator and sponsoring employer. Met Life was the Claims Administrator for the Plan's life insurance benefit. Plaintiff was Mr. Motley's daughter and the designated beneficiary on his life insurance policy. Plaintiff has received $200,000.00 in death benefits under the policy and will receive an

---

1. The parties disagree on both the proper standard of review to be applied by the Court (*de novo* or due deference) and on several factual matters. For purposes of this Order, the Court will view the facts in the light most favorable to the plaintiff. Because the Court is convinced that Met Life's decision to deny plaintiff's claim for the Extra Accident benefit was correct even under a *de novo* standard of review, the Court need not decide whether a more deferential standard of review should apply.

additional death benefit of $39,400.00 if Mr. Motley's death was "accidental" for purposes of the Plan.[2]

The following facts are undisputed for purposes of this motion: On July 23, 1989, Mr. Motley broke into the home of his former girlfriend, Sharon Miller, and attacked her with a hammer and pistol. A neighbor heard Ms. Miller's screams for help and called the police. When the police officers arrived, they heard Ms. Miller screaming and saw her struggling with a man (Mr. Motley) who had a gun in his right hand. One of the officers ordered Mr. Motley to drop the gun. Mr. Motley yelled "no!" and continued to hold the gun against Ms. Miller. Ms. Miller fell or was pushed away from Mr. Motley as his gun "clicked" (an apparent misfire) and the officers immediately shot and killed Mr. Motley.

After Mr. Motley's death, plaintiff through Marva Motley Ford filed a claim for benefits under the Plan. On November 17, 1989, Met Life denied plaintiff's application for the Extra Accident benefit on the ground that Mr. Motley's death had not been accidental. On August 7, 1990, plaintiff requested that Met Life review its decision. In response, on September 18, 1990, Met Life informed plaintiff that it would hold to its original decision. On September 27, 1990, plaintiff asked Met Life to send her the information on which it had relied. On October 2, 1990, Met Life responded that it had received plaintiff's letter and would respond "as soon as we complete our review."[3] Met Life eventually provided plaintiff copies of plan documents and sent plaintiff yet another detailed explanation of its decision by letter dated December 10, 1990.

---

2. Neither "accident" or "accidental death" are defined by the Plan.

3. Plaintiff interprets the word "review" to mean that Met Life was still conducting a review of its decision to deny the Extra Accident benefit claim at the time the letter was written. That leads her to conclude that the September 18, 1990 letter could not have been Met Life's decision on review. Another possibility is that Met Life was conducting a "review" of its files in order to provide the information requested by plaintiff.

4. As both parties in their briefs have made reference to the exhibit numbering and lettering

## Summary of Claims and Defenses

In Count I, plaintiff claims that she is entitled to the Extra Accident benefit because her father's death was accidental under the Plan. In Counts II and III, plaintiff claims that Met Life and GM violated their fiduciary duties under ERISA because they (1) failed to give timely notice of the reasons why they denied plaintiff's claim; (2) failed to timely and in good faith review the decision to deny plaintiff's claim; and (3) failed to timely provide copies of requested plan documents.

Defendants claim that Mr. Motley's death was not an accident and that plaintiff is not entitled to the Extra Accident benefit. Defendants also claim that all notices of denial were timely sent, that Met Life conducted a full and fair review of its decision to deny the claim in accordance with the procedures mandated by ERISA and the Plan, and that upon proper request, plaintiff timely received copies of the requested plan documents.

## Application of Law

Summary judgment must be granted when there are no genuine issues of material fact and movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

Straight-forward language in an ERISA plan must be given its plain meaning. *Burnham v. Guardian Life Ins. Co.,* 873 F.2d 486, 489 (1st Cir.1989). In order to recover the Extra Accident benefit, plaintiff must prove that Mr. Motley's death was the result of accidental bodily injuries.[4] The

---

scheme used by defendants, all exhibit references by the Court will be to the Appendix to Memorandum in Support of Defendants' Motion for Summary Judgment (Doc. #25). The phrase "accidental bodily injuries" appears in the insuring clause language applicable to the Extra Accident Insurance benefit. Plan (Exhibit 27) at p. 8–9. The description in the employee benefits handbook says that the Extra Accident death benefit is payable if the death was "as the result of an accident." GM Benefits Handbook for Salaried Employees (hereinafter "Plan Summary") (Exhibit 28) at p. 53.

terms "accident" and "accidental bodily injuries" are not ambiguous.[5] Because the Court finds that these terms are unambiguous, it will interpret them in accordance with their plain and ordinary meaning and reject plaintiff's invitation to strictly construe the terms of the Plan against Met Life. *Accord McLain v. Metropolitan Life Ins. Co.,* 820 F.Supp. 169, 176 (D.N.J.1993).

### Scope of Review
### (Motion in Limine)

The role of a reviewing federal district court is to determine whether the ERISA plan administrator or fiduciary made a correct decision based on the record before it at the time the decision was made. *E.g., Shaw v. Mutual Benefit Life Ins. Co.,* 1991 WL 80181 at *2 (D.Kan.1991); *Bass v. Prudential Ins. Co. of Am.,* 1990 WL 136807 at *2 n. 1 (D.Kan.1990); *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1007 (4th Cir.1985); *Wolfe v. J.C. Penney Co.,* 710 F.2d 388, 394 (7th Cir.1983); *Perry v. Simplicity Engineering,* 900 F.2d 963, 966 (6th Cir.1990). In accordance with this rule, Defendants' Joint Motion in Limine should be and hereby is granted and the Court will limit its review to the evidence and materials before Met Life at the time it made its final decision to deny plaintiff's claim for the Extra Accident benefit.[6]

### Summary Judgment

#### I. Claim for benefits (Count I)

Count I of plaintiff's Complaint is a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), which states that "a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan." Under this count, plaintiff seeks to recover the Extra Accident benefit from General Motors Life and Disability Benefits Program. As noted above, plaintiff is not entitled to recover unless Mr. Motley's death was accidental for purposes of the Plan.

The determination of substantive rights and obligations under an ERISA plan is a question of federal common law. *Pilot Life Ins. Co. v. Dedeaux* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). ERISA was enacted in September, 1974 and does not define the terms "accident" and "accidental death." In analogous circumstances, however, the Fifth Circuit Court of Appeals has held that a death is not "accidental" under ERISA where the decedent was the aggressor in an altercation from which a fatal injury should have been expected. *Pierre v. Connecticut General Life Ins. Co.,* 932 F.2d 1552 (5th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991). In developing the federal common law on the rights and obligations afforded under ERISA-regulated plans, federal courts may look to state law for guidance when ERISA does not specifically address a certain issue. *Harmond v. Teamsters Joint Council No. 83 of Virginia Health & Welfare Fund,* 795 F.Supp. 783 (E.D.Va.1992); *Southern Farm Bureau Life Ins. Co. v. Moore,* 993 F.2d 98, 102 (5th Cir.1993) (look to general principles of common law or state law if ERISA provides no guidance).

State insurance law dealing with accidental death benefits reveals support for the standard announced in *Pierre, supra. See Eagan v. Prudential Ins. Co. of America,* 234 Mo.App. 295, 128 S.W.2d 1085 (1939) (death from police gunshot wound received in course of attempted burglary by insured not accidental); *McGuire v. Metropolitan Life Ins. Co.,* 164 Tenn. 32, 46 S.W.2d 53 (1932) (death from gunshot wound received in course of robbery not accidental).[7] Under

---

5. Plaintiff claims that the terms "accidental bodily injuries" and "accident" are ambiguous because they are not defined by the Plan. This argument misses the mark, however, as a matter of law. Ambiguity exists when the language at issue is subject to two or more reasonable interpretations and its proper meaning is uncertain. *Topeka Ry. Equip., Inc. v. Foremost Ins. Co.,* 5 Kan.App.2d 183, 186–87, 614 P.2d 461 (1980).

Plaintiff has not even suggested to the Court what these conflicting interpretations might be.

6. The cases cited by plaintiff from the Eighth and Eleventh Circuits and the Federal District Court for the Eastern District of Pennsylvania are not controlling.

7. The goal of ERISA is to insure that all beneficiaries receive the benefits to which they are

this standard, Mr. Motley's death was not "accidental" if it was the natural and probable consequence of his actions.

> If a person consciously provokes or induces a police officer to shoot him to death, his death is not accidental within the meaning of an accidental death benefit clause in an insurance policy on his life, since his death would be a natural and probable consequence of his own conduct. . . .

1B Appleman, Insurance Law & Practice § 457 (citing *Williams v. Prudential Ins. Co. of America*, 271 Ill.App. 532 (1934); see also, *Manno v. Metropolitan Life Ins. Co.*, 139 Misc. 848, 249 N.Y.S. 471 (1931) (death not accidental where natural and probable consequence of drawing gun on police officer).

 On this record, the Court finds as a matter of law that Mr. Motley's death was not accidental and that plaintiff is not entitled to the Extra Accident benefit.[8]

### II. Breach of fiduciary duty (Count II)

Count II alleges that Met Life and GM violated 29 U.S.C. § 1133, 29 U.S.C. § 1024, and 29 C.F.R. § 2560.503–1 by administering the claims process to "unduly inhibit or hamper the processing of claims." Specifically, plaintiff alleges (1) that defendants did not inform plaintiff that she had 60 days in which to appeal Met Life's denial of benefits; (2) that GM violated the Plan terms by using Met Life as the reviewing fiduciary because the Plan did not expressly so designate; (3) that Met Life failed to timely announce its

written decision on plaintiff's request for review; (4) that defendants never allowed plaintiff to submit additional factual information during the "appeals process"; and (5) that defendants failed to provide plaintiff a "full and fair review."

Plaintiff seeks a court order requiring defendants to administer their claims and appeals procedures in accordance with ERISA and plan documents. She also seeks a discretionary award of attorneys fees and costs under 29 U.S.C. § 1132(g).

### A. Failure to state time for appeal

 Plaintiff first claims that Met Life violated ERISA and the Plan by failing to state, in its denial of benefits letter, that plaintiff had 60 days in which to appeal. Plaintiff has not cited any ERISA provision which mandates such a disclosure and the Court is aware of none.

According to regulations promulgated by the Department of Labor, "[a] plan may establish a limited period within which a claimant must file any request for review of a denied claim," and "[i]n no event may such a period expire less than 60 days after receipt by the claimant of written notification of denial of a claim." 29 C.F.R. § 2560.503–1(g)(3).

Under the Plan, plaintiff had 60 days to request review of a decision to deny benefits. Neither the regulations nor the Plan, however, required the Claims Administrator to mention the 60 day time limitation in its written denial of benefits letter.[9]

---

entitled. Money improperly paid out for uncovered claims reduces the amount of money available to pay valid claims. An ERISA plan fiduciary is under no obligation to interpret the plan in such a way as to favor one group of beneficiaries to the detriment of another. *Edwards v. Wilkes–Barre Pub. Co. Pension Trust*, 757 F.2d 52, (3rd Cir.1985), *cert. denied* 474 U.S. 843, 106 S.Ct. 130, 88 L.Ed.2d 107. The rule cited in these state law cases is not inconsistent with the provisions of ERISA and may properly be used to guide the Court's decision.

**8.** Plaintiff faults Met Life for not examining the post-mortem toxicology report on Mr. Motley which indicated that he may have been under the influence of alcohol at the time of his death. First, the claimant had an affirmative duty to present to the claims administrator any evidence

which she wanted the administrator to consider. *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 379–81 (10th Cir.1992). Second, the fact that Mr. Motley might have been intoxicated would not diminish his legal responsibility for the natural and probable consequences of his conduct unless his intoxication was involuntary. *See United States v. Shuckahosee*, 609 F.2d 1351, 1355 (10th Cir.1979), *cert. denied* 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 605 (1980); *Mullaney v. Prudential Ins. Co.*, 125 F.2d 900, 901 (5th Cir.1942). Plaintiff has failed to present any such evidence.

**9.** Even if the Court were inclined to rule that a disclosure requirement was somehow implicit in ERISA or the Plan, it would be disinclined do so in this case. Here, Met Life agreed to review the decision to deny the benefit even though the

## B. Met Life as Claims Administrator

█ Plaintiff claims that defendants violated ERISA because although Met Life served as claims administrator or claims processor, the Plan did not expressly so provide.

The regulations implementing ERISA specifically allow an underwriting insurance company to process claims made under ERISA plans. They provide in pertinent part as follows:

> (c) Claims procedure for an insured welfare or pension plan. (1) To the extent that benefits under an employee benefit plan are provided or administered by an insurance company ... which is subject to regulation under the insurance laws of one or more States, the claims procedure pertaining to such benefits may provide for filing of a claim for benefits with and notice of decision by such company....

29 C.F.R. § 2560.503–1. As a matter of law, this provision allows Met Life, an insurance company regulated by state law, to process claims made under the Plan—without regard to whether Met Life is identified as the claims processor in the Plan.

The Plan's failure to name Met Life the "claims administrator" or "claims processor" cannot be said to "unduly inhibit or hamper the processing of claims." The Plan Summary is distributed to all GM employees, and it identifies Met Life as the provider of all plan life insurance benefits. The Plan Summary also outlines the procedure for initiating claims, and the application for benefits prominently displays the name "Metropolitan Life" in the upper right hand corner. The Court finds as a matter of law that a failure to designate Met Life as the claims processor in the Plan was not a violation of ERISA.

## C. Timeliness of the decision on review

█ 29 C.F.R. § 2560.503–1(h)(1)(i) states in pertinent part that "a decision by an appropriate named fiduciary shall be made promptly, and shall not ordinarily be made later than 60 days after the plan's receipt of a request for review...." The Plan likewise requires Met Life, as the designated fiducia-

ry, to announce its decision on review within 60 days after the request for review has been made. Plaintiff claims that Met Life did not provide its written decision, however, until some 125 days after her written request for review.

Defendants assert that their decision on review was contained within Met Life's letter of September 18, 1990 (Exhibit 17) and was provided to plaintiff 42 days after the written request for review. Plaintiff disagrees, arguing that Met Life's letter could not have been a decision on review because it "simply repeat[ed] the reasons [Met Life] denied the claim" and did not refer to plaintiff's request for review.[10]

Plaintiff mischaracterizes the facts. Met Life's letter of September 18, 1990, specifically states that it is "in response to" plaintiff's request for review and it contains numerous references to specific cases which, according to Met Life, supported its decision to deny the Extra Accident benefit. Met Life's original denial contained no citation to legal precedent.

The Court finds as a matter of law that the letter of September 18, 1990 was Met Life's written decision on review and was communicated to plaintiff within the 60–day period allowed by the Plan. Met Life followed the claims procedure required under 29 U.S.C. § 1133, 29 C.F.R. § 2560.503–1, 29 U.S.C. § 1024, and the Plan itself.

## D. Submission of factual information

█ Plaintiff points out that Met Life's claim denial letter failed to specify what additional information (if any) was necessary to perfect plaintiff's claim, and also failed to specify that the Plan was covered by ERISA. Met Life's claim denial letter (Exhibit 15) reads in pertinent part as follows:

> The Group Policy provides for payment of these additional benefits only when the company receives due proof that the insured sustained accidental bodily injury, resulting directly and independently of all other causes, in the death.

request for review was not made until some nine months after the claim was initially denied.

10. Plaintiff's Motion for Summary Judgment at p. 24.

Mr. Motley's death was a result of a homicide that ocurred [sic] on July 23, 1989. According to the reports Mr. Motley was the agressor [sic] in the events which resulted in his death.

According to Missouri Law [sic] when an insured is killed as a consequence of an assault, his death cannot be deemed an accident within the meaning of coverage for accidental death benefits.

You may request a review of the claim by writing directly to Group Insurance Claims Review Metropolitan Life Insurance Company, at the address indicated above. They [sic] should include the information contained in the Claim Identification shown above. When requesting this review, the claimant should state any data, questions, or comments to Metropolitan that you deems [sic] appropriate. All data will be re-evaluated and you will be informed in a timely manner of our findings.

This letter specifically referred to the Plan provisions on which Met Life based its denial of coverage.[11] The letter does not say what additional information is necessary to "perfect" plaintiff's claim, but defendants do not claim that plaintiff's appeal was improperly perfected. Met Life clearly sets forth the procedure for review.

 Plaintiff cites no authority for the proposition that ERISA required Met Life to inform plaintiff that the Plan was an ERISA plan and here again, the Court is aware of no such requirement. Plaintiff has also failed to present *any* evidence that Met Life "never allowed Ms. Motley or her counsel to submit any additional information during the appeal process."[12] Defendants are entitled to summary judgment on this claim.

*E. Full and fair review by a fiduciary*

 29 U.S.C. § 1133 states in pertinent part as follows:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

This provision guarantees a claimant the opportunity to know what evidence the decision-maker relied upon, the opportunity to address the accuracy and reliability of the evidence, and the right to have the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision. *Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 893–94 (10th Cir.1988) quoting *Grossmuller v. Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am., Local 813,* 715 F.2d 853, 858 n. 5 (3rd Cir.1983). The regulations promulgated by the Secretary state in pertinent part as follows:

Every such procedure shall include but not be limited to provisions that a claimant or his duly authorized representative may:

(i) Request a review upon written application to the plan;

(ii) Review pertinent documents; and

(iii) Submit issues and comments in writing.

29 C.F.R. § 2560.503–1(g)(1).

Plaintiff claims that Met Life never conducted a full and fair review of its decision to deny her claim for the Extra Accident benefit. She also alleges that Met Life is not a "fiduciary" because it was in Met Life's self-interest to deny the claim, and that Met Life's law department simply "rubber stamped" the decision to deny benefits.

 Under 29 C.F.R. § 2560.503–1(g)(2), an insurance company subject to regulation

---

**11.** Met Life quoted the "accidental bodily injury" language provision of the plan at issue in its decision. This constitutes substantial compliance with the "specific reference" requirement of 29 C.F.R. § 2560.503–1(f)(2) even though Met Life did not state the page on which that language appeared. *See Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 893 (10th Cir.1988).

**12.** *See* Plaintiff's Motion for Summary Judgment at p. 26. The claimant has the affirmative duty to present to the claims administrator any evidence she wants the administrator to consider. *Sandoval v. Aetna Life & Cas. Ins. Co.,* 967 F.2d 377, 379–81 (10th Cir.1992).

under state law is *deemed* to be an adequate fiduciary for purposes of reviewing claim denials:

> (g) Review procedure. (1) Every plan shall establish and maintain a procedure by which a claimant or his duly authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary or to a person designated by such fiduciary. . . .
>
> (2) To the extent that benefits under an employee benefit plan are provided or administered by an insurance company . . . subject to regulation under the insurance laws of one or more States, [the plan] may provide for review of and decision upon denied claims by such company. . . . In such case, that company . . . shall be the "appropriate named fiduciary" for purposes of this section.

This is not a case like *Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 894 (10th Cir.1988), in which the named fiduciary had no established claims review procedure whatsoever. Insurance companies are deemed by ERISA to be capable of carrying out a full and fair review of their decisions to deny benefits.

Whether Met Life conducted a full and fair review is the subject of dispute. Its written decision on review contains numerous legal citations and this fact is certainly some evidence that Met Life conducted a full and fair review. The current record is insufficient, however, to determine as a matter of law that (1) plaintiff had an opportunity to address the accuracy and reliability of the evidence considered by Met Life and (2) that Met Life considered all of the evidence presented before reaching and rendering its decision.

### III. *Delay in providing plan documents (Count III)*

■ In Count III, plaintiff seeks to enjoin GM and Met Life from violating the ERISA requirement that plan administrators provide claimants copies of requested plan documents within 30 days. Plaintiff also seeks a penalty of $100 per day for each day of delay beyond the aforementioned 30 days under 29 U.S.C. § 1132(c)(1)(B).

Under 29 U.S.C. § 1132(c)(1)(B), an ERISA "administrator" must provide plan information requested by a plan participant or beneficiary within 30 days. Any "administrator" who fails to meet this requirement "may in the court's discretion be personally liable to [the beneficiary] in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1). ERISA expressly defines the term "administrator" as the person designated by the Plan instrument, or the plan sponsor if no administrator is named by the plan document. 29 U.S.C. § 1002(16)(A).

The Plan document in this case clearly designates GM as the sponsoring employer and plan administrator.[13] Plaintiff made her initial request for plan documents to the *claims* administrator (Met Life), however, not to the *plan* administrator (GM).[14] Met Life was not the "administrator" of the Plan, as that term is defined under ERISA, and it cannot be liable under 29 U.S.C. § 1132(c)(1)(B) for failing to produce plan documents. *Bass v. Prudential Ins. Co. of America,* 764 F.Supp. 1436, 1441 (D.Kan. 1991).

■ Plaintiff first requested plan documents from the "administrator" on June 11, 1991 when she asked GM for the documents. Nine days later, on June 20, 1991, Met Life sent various Plan documents to plaintiff. On June 27, 1991, seven days after Met Life sent the Plan documents to plaintiff, GM sent plaintiff a follow-up letter which expressed GM's understanding that plaintiff had by then received the Plan documents directly from Met Life and urged plaintiff to let GM

---

13. Plan summary (Exhibit 28) at p. 70. Plaintiff also admits GM is the plan administrator in her letter dated June 11, 1991 (Exhibit 24).

14. After September 18, 1990, when Met Life communicated its decision on review, plaintiff apparently wrote Met Life to request yet another review and certain plan documents. Met Life, as claims administrator, had no apparent legal duty to produce the requested documents.

know if that was not the case. Plaintiff did not notify GM of any problem with the documentation she had received from Met Life and instead filed the instant suit. The statutory penalty for delay is discretionary with the Court. Under these facts, even if the Court were to find an ERISA violation, penalties would be inappropriate.[15]

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion in Limine (Doc. # 21) should be and hereby is granted; that Defendants' Joint Motion for Summary Judgment (Doc. # 22) filed March 25, 1992, should be and hereby is granted as to Count I and Count II and denied as to Count III [16]; that plaintiff's Motion for Summary Judgment (Doc. # 25), filed April 1, 1992, should be and hereby is denied; and that Defendants' Request for Oral Argument (Doc. # 35) should be and hereby is denied.

**IT IS FURTHER ORDERED** that plaintiff's claims with respect to Count III be and hereby are set for trial on December 7, 1993.

---

15. Though the Court is puzzled by Met Life's failure to provide plaintiff with the plan documents when she first asked for them, or to at least tell her she needed to ask GM for them, the Court is also troubled by plaintiff's failure to inform GM if she had not received the documents she had requested.

16. The Court will defer ruling on Defendants' request for fees and costs until final resolution of Count III.