**William Bret HAMMERS, Plaintiff,**

v.

***AETNA LIFE INSURANCE COMPANY, Defendant.***

**Civil Action No. 94–1302–FGT.**

United States District Court,
D. Kansas.

April 15, 1997.

similar specific state of mind.

Larry D. Toomey, Toomey, Russell, Pilgreen & Innes, Wichita, KS, James A. Cline, Wichita, KS, for William Bret Hammers.

Stephen M Kerwick, Foulston & Siefkin L.L.P., Wichita, KS, for Aetna Life Ins. Co.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court for entry of findings of fact and conclusions of law. Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., for the recovery of benefits under an employee health plan.

## FINDINGS OF FACT

In the summer of 1993, while he was a graduate student at the University of Arizona, plaintiff William Bret Hammers was diagnosed with cancerous tumor, squamous cell carcinoma, on his tongue. After learning of this diagnosis, the plaintiff returned to Wichita, where his family lived, for treatment.

After consultation with several doctors, plaintiff elected to undergo a surgical excision of the tumor, coupled with a radical neck dissection to determine the extent of the cancer. Radiation therapy was not considered necessary for the plaintiff's case.

Dr. David Sargent, D.O., performed the surgery, removing the tumor and approximately 50 lymph nodes from the plaintiff's neck. The pathology report for the lymph nodes was negative, revealing no spread of the cancer.

At the time of plaintiff's August 1993 surgery, there was no observable metastasis. Following the surgery, plaintiff's doctors considered him to be in complete remission with no evidence of any active disease.

Plaintiff's treating physicians agreed that there was a risk of approximately 20% that the cancer would recur.

As part of Dr. Sargent's usual follow-up for cancers of the head and neck, he examined plaintiff monthly following the surgery to check for any evidence of recurrence. These office visits occurred on September 9, 1993, October 14, 1993, November 29, 1993 and January 3, 1994. Dr. Sargent considered these visits to be follow-up care and treatment for the original cancer diagnosed and treated in August 1993.

At the office visits in September, October and November 1993 and in January 1994, Dr. Sargent saw no evidence of recurrence of the cancer.

On November 1, 1993, plaintiff went to work for Foster Design Company in Wichita, Kansas. Under Foster Design Company's health plan, plaintiff was enrolled as a participant in an ERISA multi-employer health coverage plan administered by defendant Aetna Life Insurance Company. Under the plan, the plaintiff was entitled to health coverage after three continuous months of service at Foster Design Company, or on February 1, 1994.

The preexisting condition limitation of the plan provides:

A condition is a preexisting condition if, during the last 90 days before the person's current period of coverage became effective:

* treatment or services were received; or

* it was diagnosed or treated; or

* prescription drugs or medicines were prescribed or taken for that condition.

. . . .

During the first 365 days of a person's current period of coverage, Covered Medical Expenses do not include any expenses incurred for treatment of a "preexisting condition" or a condition which is caused or contributed to by or is a consequence of a "preexisting condition".

Plaintiff's Exh. 2, p. 14.

During the ninety days before plaintiff's coverage took effect, Dr. Sargent saw plaintiff twice, on November 29, 1993 and January 3, 1994. The doctor's office notes reflect that these office visits were in follow up of the "squamous cell carcinoma of the right lateral tongue." Dr. Sargent found no evidence of any recurrence of the cancer during those visits.

On February 8, 1994, plaintiff returned to Dr. Sargent for his normally scheduled follow-up visit. During that visit, plaintiff pointed out a lump on his neck that he had noticed since his last visit. Plaintiff testified in his deposition that he had discovered the lump five to seven days earlier. Dr. Sargent's office notes state that the plaintiff had noted a small lump on his neck for a month.

Upon discovery of the lump in plaintiff's neck, Dr. Sargent ordered a fine needle biopsy, which revealed further squamous cell cancer.

On February 16, 1994, plaintiff underwent additional surgery, followed by radiation therapy. The expenses for that surgery, radiation therapy and other related medical care form the subject matter of plaintiff's claim for recovery in this case. The parties have stipulated that plaintiff has incurred $104,871.69 in medical expenses, and that those charges are fair and reasonable.

Plaintiff's treating physicians agreed that the cancer discovered in February 1994 was a recurrence of the cancer diagnosed in the summer of 1993, and not a new primary tumor.

Dr. Sargent believed that the cancer was likely already in transit before the first surgery in August 1993.

Dr. Barbara Luder DeWitt, plaintiff's treating radiation oncologist, believed that the cancer was present as a microscopic disease which was not detected in the August 1993 neck dissection. Dr. DeWitt believed the disease was present throughout the entire period of August 1993 through February 1994. Oncologist David B. Johnson, M.D., agreed in this assessment.

When the plaintiff's claim for coverage was disputed, Dr. Sargent signed a note, drafted by plaintiff's father, which stated:

To Whom It May Concern:

Between 11/01/93 and 01/31/94, I saw

W.B. (Bret) Hammers,

S.S.# 515–76–3601,

for the purpose of regularly scheduled checkups. During the time period from 11/01/93 to 01/31/94 he did not receive from me treatment or services for his current condition, his current condition was not diagnosed or treated, and no prescription drugs or medicines were prescribed or taken for his current condition.

Plaintiff's Exh. 1.

At the time the defendant made its decision denying coverage, the evidence before it indicated that the two diagnosed episodes of squamous cell carcinoma were related. The second episode was a recurrence of the initial cancer, and not a new primary tumor.

### CONCLUSIONS OF LAW

Plaintiff brings this civil action pursuant to 29 U.S.C. § 1132(a)(1)(B), which authorizes a beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan ..."

The court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)–(f) and 28 U.S.C. § 1331.

The parties have stipulated that the court has personal jurisdiction of the parties and that venue is proper in this district.

Although 29 U.S.C. § 1132(a)(1)(B) provides for judicial review of a denial of benefits due under a benefit plan, it does not set out the appropriate standard of review.

A denial of benefits challenged under § 1132(a)(1)(B) is reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Sandoval v. Aetna Life and Casualty Insurance Co.,* 967 F.2d 377, 379–80 (10th Cir.1992).

The parties agree that the de novo standard of review applies in the present case since no discretionary authority exists in the plan to determine eligibility for benefits or to construe the terms of the plan.

In interpreting the terms of an ERISA plan the court examines the plan documents as a whole and, if unambiguous, the court construes them as a matter of law. In the present case, the court applies the de

novo standard of review to interpret the terms of the plan, "giving the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir.1996).

The Tenth Circuit has held that in reviewing a decision of a plan administrator under the arbitrary and capricious standard, the reviewing court may consider only the evidence that was before the administrator at the time of its final decision. *Chambers v. Family Health Plan Corp.*, 100 F.3d 818 (10th Cir.1996). While the Tenth Circuit does not appear to have addressed the appropriate standard of review in a case involving the de novo standard, case law in this district does not differentiate between the two standards of review.

■ The district court's review of a denial of benefits is limited to the record before the plan administrator at the time it reached its decision. *Caldwell v. Life Insurance Co. of North America*, 165 F.R.D. 633, 636–37 (D.Kan.1996); *Shaw v. Mutual Benefit Life Insurance Co.*, 1991 WL 80181, at *2 (D.Kan. 1991) (quoting *Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir.1990)). This limitation exists whether the standard of review is arbitrary and capricious or de novo. *Caldwell*, 165 F.R.D. at 637.

■ The court reviews the administrator's decision without deference to that decision and without any presumption of correctness, based on the record before the administrator. When a court reviews a decision de novo, it simply decides whether or not it agrees with the decision under review. *Shaw*, 1991 WL 80181, at *2.

The court's role is to determine whether the ERISA plan administrator made a correct decision based on the record before it at the time the decision was made. *Ford v. Metropolitan Life Insurance Co.*, 834 F.Supp. 1272, 1277 (D.Kan.1993).

Thus, the court will attempt to limit its review to the evidence and materials before the defendant at the time the defendant made its final decision to deny plaintiff's claim. The court's decision has been made more difficult by the parties' failure to specify what evidence was in the record before the defendant at the time it made its decision. Although the court has reviewed the proffered depositions in order to discuss the decisions that were made regarding treatment and the conclusions that were reached in the medical records, that testimony was not before the defendant at the time it decided plaintiff's claim. The court has not been advised of what items may have been before the defendant when it made its final decision, other than the exhibits presently before the court.

■ The court finds that the defendant's decision to deny plaintiff's claim for benefits was correct based on the record before it at the time it made its decision.

Plaintiff was diagnosed with squamous cell carcinoma in August 1993. That condition was an ongoing one which was present during the ninety day period prior to the commencement of coverage under the plan. Plaintiff's cancer was a preexisting condition within the meaning of the plan, since the medical services Dr. Sargent performed in November 1993 and January 1994 were for that cancerous condition. The subsequent recurrence of the cancer was caused by, contributed to by, or was a consequence of the preexisting squamous cell carcinoma for which plaintiff received treatment during the ninety day period prior to coverage. The recurrence of the cancer falls within the exclusion from coverage contained in the plan. Accordingly, the defendant's decision denying benefits to the plaintiff was correct.

Plaintiff requests an award of attorney fees under 29 U.S.C. § 1132(g)(1), which provides: "In any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of the action to either party."

■ Whether a party is entitled to an award of attorney fees in an action brought under ERISA is a determination left to the trial court's sound discretion. An award of attorney fees is not to be made "as a matter

of course." *Gordon v. United States Steel Corp.*, 724 F.2d 106, 108 (10th Cir.1983).

The statute does not expressly require that a party prevail as a condition to receiving an award of attorney fees. *Morgan v. Independent Drivers Association Pension Plan*, 975 F.2d 1467, 1471 (10th Cir.1992).

■ The primary factors for the court to consider in determining whether to award attorney fees under section 1132(g)(1) are: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney fees; (3) whether an award of attorney fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Gordon*, 724 F.2d at 109; *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1209 n. 17 (10th Cir.1992). These five factors are merely guidelines and no single factor is dispositive. *McGee*, 953 F.2d at 1209 n. 17. However, it is an important consideration that the plaintiff did not prevail on his claim. *See Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 827–28 (10th Cir.1996) (declining to remand for district court to explain attorney fee denial when plaintiff did not prevail on any claim); *Morgan*, 975 F.2d at 1471–72 (same).

■ There is no evidence of bad faith conduct on the part of the defendant. Plaintiff's claim is individual and this litigation does not appear to have any far-reaching consequences either for other plan participants or other ERISA plans. Plaintiff did not prevail on the merits of his claim. Only the second factor appears to be satisfied, in that the defendant would likely be able to satisfy an award of attorney fees. This is insufficient to justify an award of fees.

**IT IS BY THIS COURT THEREFORE ORDERED** that judgment be entered in favor of the defendant Aetna Life Insurance Company.

**IT IS FURTHER ORDERED** that plaintiff's request for attorney fees is hereby denied.